UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | |
|---|---|
| BILL L. GOUVEIA AS ADMINISTRATOR OF THE ESTATE OF JOSE GUERRA, | : <br> : <br> : |
| Plaintiff, | : <br> : <br> : |
| v. | :    CIVIL ACTION NO: <br> :    3:03 CV 597(MRK) <br> : |
| SIG SIMONAZZI NORTH AMERICA, INC. AS SUCCESSOR IN INTEREST BY MERGER TO SASIB NORTH AMERICA, INC., AS SUCCESSOR IN INTEREST BY MERGER TO SASIB BAKERY NORTH AMERICA, INC., | : <br> : <br> : <br> :    October 29, 2004 <br> : |
| Defendant. | : |
| SIG SIMONAZZI NORTH AMERICA, INC., | : <br> : |
| Third-Party Plaintiff, | : |
| v. | : <br> : |
| SASIB FOOD MACHINERY MV, S.P.A., SASIB BAKERY ITALIA, S.P.A., DRY PRODUCTS, S.P.A., AND COMPAGNIE INDUSTRIALI RIUNITE, S.P.A., | : <br> : <br> : <br> : |
| Third-Party Defendants. | : |

**THIRD-PARTY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFF'S MOTION TO AMEND THE COMPLAINT**

**Factual Background**

Plaintiff commenced suit against Sig Simonazzi North America, Inc. (the "Defendant") by filing a complaint on April 2, 2003 (the "Original Complaint"), which arose from an accident that occurred on April 27, 2001. On December 12, 2003, Defendant filed with the Court, and

1

served upon Plaintiff, its Motion For Leave to File a Third-Party Complaint, which named Sasib Food Machinery MV, S.p.A. ("SFMMV"), Sasib Bakery Italia, S.p.A. ("SBI"), Dry Products, S.p.A. ("Dry Products"), and Compagnie Industriali Riunite, S.p.A. ("CIR") as proposed third-party defendants.  On January 8, 2004, this Court granted Defendant's motion.

Aware of the Third-Party Defendants' identities in December 2003, and with roughly four and one-half months remaining in the statute of limitations, Plaintiff decided not to sue SFMMV, SBI, Dry Products, or CIR.[1]  On April 27, 2004, the three-year statute of limitations on Plaintiff's product liability claims expired.[2]  *See* Conn. Gen. Stat. § 52-577a(a).  On September 8, 2004—roughly four and one-half months after the expiration of the statute of limitations—Plaintiff filed the instant motion, pursuant to Rule 15 of the Federal Rules of Civil Procedure, seeking to amend the Original Complaint to add SFMMV, SBI, Dry Products, and CIR as defendants to the main action.

As an initial matter, neither Dry Products nor CIR has had any contacts with the State of Connecticut. Neither Dry Products nor CIR has any office in Connecticut.  Neither has any employees in Connecticut.  Neither is party to any contract to be performed in Connecticut.  Neither has brought any lawsuits in Connecticut or engaged in any other activity in Connecticut. (Decl. Piaser ¶ 12.)

---

[1]     SFMMV and SBI have merged into one entity renamed Food Machinery Medium Volume, S.p.A. ("FMMV").  (Decl. Piaser ¶ 2.)  This Memorandum shall at times refer to SFMMV and SBI by the name FMMV.

[2]     While there can be no dispute that Plaintiff knew the Third-Party Defendants' identities in December 2003, before the statute of limitations ran, upon information and belief, Plaintiff knew SBI's identity long before December 2003, based on observations of the bakery machine which is the subject of this case.  This assertion is based on photographic evidence in this case that shows that "Sasib Bakery Italy" appears on the bakery machine that is alleged to have been defective.  (Decl. Mazer, Ex. 3.)

Plaintiff's proposed pleading contains many allegations that are not, and indeed cannot, be supported by any documentary proof. For example, Plaintiff alleges that "Dry Products . . . charged Chaves Bakery $2,303,676.00 for the machine, including $97,700.00 for supervision of installation by . . . Dry Products' engineers and $57,100.00 for lodging and travel expenses for . . . Dry Products' engineers." (Proposed Am. Compl. ¶ 87.) Plaintiff makes an identical allegation with respect to CIR. (Proposed Am. Compl. ¶ 108.) Plaintiff attaches no documentary proof to its motion to amend to support these allegations. Indeed, no documentary proof exists that could support such allegations. In fact, the purchase agreement with respect to the bakery machine in issue ("the bakery machine"), Order Confirmation No. 115964, contradicts these allegations. The agreement, signed by Defendant and Chaves Bakery, shows that Defendant, not Dry Products or CIR, charged Chaves Bakery $2,303,576.00 for the bakery machine, service, and installation. (Decl. Mazer, Ex. 4.) Dry Products and CIR are not mentioned in that agreement.

Dry Products and CIR are Italian holding companies ("the holding companies") that own stock in other companies for investment purposes. (Decl. Piaser ¶ 3.) Dry Products owns 100% of the stock of FMMV (previously SBI and SFMMV). (Decl. Piaser ¶ 3.) CIR owns 55% of the stock of Dry Products, but does not own any stock in FMMV. (Decl. Piaser ¶ 3.) Dry Products and CIR are separate entities registered at the Chambers of Commerce in Milan and Turin, respectively. (Decl. Piaser, Exs. 1 & 2.) As recited in their Certificates of Status, the holding companies own stock in companies in various sectors solely for investment purposes. (Decl. Piaser ¶ 3.) While CIR's corporate purpose is written more broadly than that of Dry Products, CIR's profit and loss statement, which is attached to the Paiser Declaration shows that, in fact, CIR is engaged only in the activities of a holding company. (Decl. Piaser ¶ 3 & Ex. 4.)

Neither Dry Products nor CIR manufactures, sells, assembles, or is otherwise involved in the production of the bakery machine or any of its parts, or any machinery or product sold in the marketplace. (Decl. Piaser ¶¶ 3, 4.) Neither the name nor mark of Dry Products or CIR appeared on the bakery machine or any of its parts, or any machinery or product sold in the marketplace. (Decl. Piaser ¶ 8.)

As holding companies, Dry Products and CIR have never held title to the bakery machine or any of its parts, never been lessors or bailors of the bakery machine or any of its parts, never financed the bakery machine or any of its parts, never held a security interest in the bakery machine or any of its parts, and have never advertised the bakery machine or any of its parts. (Decl. Piaser ¶ 4.) The holding companies have never participated in the day-to-day management of FMMV, SFMMV, or SBI, have never had any director in common with FMMV, SFMMV, or SBI, and have never agreed to assume the liabilities of FMMV, SFMMV, or SBI. (Decl. Piaser ¶¶ 4-7.) Dry Products and CIR have always maintained separate offices from each other and from FMMV, SFMMV, and SBI. (Decl. Piaser ¶ 10.) They maintain separate assets and accounts from each other and from FMMV (and, prior to the merger and renaming, from SFMMV and SBI). (Decl. Piaser ¶ 11.)

In short, the factual record before the Court shows: (1) Plaintiff deliberately chose not to add SFMMV, SBI, Dry Products, and CIR as defendants prior to the expiration of the statute of limitations, (2) Dry Products and CIR have had no contacts with Connecticut, and (3) Dry Products and CIR were not involved with the sale or manufacture of the bakery machine, or any machinery.

# ARGUMENT

## POINT I

### THE COURT SHOULD DENY PLAINTIFF'S MOTION TO AMEND BECAUSE PLAINTIFF'S FAILURE TO SUE SFMMV, SBI, DRY PRODUCTS, AND CIR WAS A DELIBERATE CHOICE, NOT A MISTAKE AS REQUIRED BY RULE 15(c)

It is undisputed that Plaintiff's proposed amended complaint, which seeks to add SFMMV, SBI, Dry Products, and CIR as defendants in a product liability claim, is untimely, having been submitted after the expiration of the statute of limitations. Thus, Plaintiff can pursue its claims against SFMMV, SBI, Dry Products, and CIR "only if [its] amended complaint relates back to the date of the original complaint." *Ziemba v. Clark*, 2003 U.S. Dist. LEXIS 22117, at *11 (D. Conn. 2003) (citing James W. Moore, Moore's Federal Practice § 15.19(3)(a) at 15-84 (3d ed. 1997) ("Rule 15 is the only vehicle available for a plaintiff to amend the complaint to change or add a defendant after the statute of limitation has run.")). Rule 15(c) contains the requirements "that must be met before an amended complaint that names a new party can be deemed to relate back to the original timely complaint." *VKK Corp. v. Nat'l Football League*, 244 F.3d 114, 128 (2d Cir. 2001). Rule 15(c) states, in relevant part:

> An amendment of a pleading relates back to the date of the original pleading when
>
> (2) the claim or defense asserted in the amended pleading arose out of the conduct, transaction, or occurrence set forth or attempted to be set forth in the original pleading, or
>
> (3) the amendment changes the party or the naming of the party against whom a claim is asserted if the foregoing provision (2) is satisfied and . . . the party to be brought in by amendment (A) has received such notice of the institution of the action that the party will not be prejudiced in maintaining a defense on the merits, and (B) knew or should have known that, *but for a mistake concerning the identity of the proper party*, the action would have been brought against the party.

Fed. R. Civ. Proc. 15(c)(2)-(3) (emphasis added).  Because Plaintiff seeks to change the parties against whom its claims are made, Plaintiff must meet the requirements of both Rule 15(c)(2) and (c)(3).  "First, both complaints must arise out of the same conduct, transaction, or occurrence.  Second, *the additional defendant[s] must have been omitted from the original complaint by mistake*.  Third, the additional defendant[s] must not be prejudiced by the delay."  *VKK Corp.*, 244 F.3d at 128 (citing *Soto v. Brooklyn Corr. Facility*, 80 F.3d 34, 35-36 (2d Cir. 1996)) (emphasis added).  With respect to Rule 15(c)'s mistake requirement, "[i]n [its] motion, the plaintiff must allege a reason for the mistake in omitting the proposed additional defendant[s] from the original pleading."  *Ziemba*, 2003 U.S. Dist. LEXIS 22117 at *12; *Bristout Bourguignon Prisoner v. (WIG) Heinz Spielvogel*, 2004 U.S. Dist. LEXIS 5476, at *5 (D. Conn. 2004) (same).

      In neither its motion nor the proposed amended complaint does Plaintiff explain how the omission of SFMMV, SBI, Dry Products, and CIR from the Original Complaint was the result of a mistake, under Rule 15(c)(3)(B).  Indeed, Plaintiff ignores the mistake requirement of Rule 15(c)(3)(B) entirely.  It is not surprising that Plaintiff failed to allege any mistake because under no version of the facts can it be argued that a mistake of the sort contemplated by Rule 15(c)(3)(B) was made here.

      The Court of Appeals for the Second Circuit has addressed the mistake requirement of Rule 15(c)(3).  In *Cornwell v. Robinson*, 23 F.3d 694 (2d Cir. 1994), the Court held that "[t]he requirement that a new defendant 'knew' he was not named due to a mistake concerning identity presupposes that in fact the reason for his not being named was a mistake in identity."  *Id.* at 705.  There, the plaintiff sought to amend her complaint after the expiration of the statute of limitations to add several individual defendants whose identities she knew at the time of the

filing of the original complaint, and prior to the expiration of the statute of limitations. The Court found that plaintiff's failure to name them as defendants in the original complaint could not be considered a "mistake," but was rather a matter of choice. *Id.* at 705. *Barrow v. Wethersfield*, 66 F.3d 466 (2d Cir. 1995) is another case in point. There, the plaintiff did not know the identities of the parties it sought to add by amendment at the time of the filing of the original complaint, but learned them subsequently. The Court held that "Rule 15(c) does not allow an amended complaint adding new defendants to relate back if the newly-added defendants were not named originally because the plaintiff did not know their identities." *Barrow*, 66 F.3d at 470; *see also Ziemba*, 2003 U.S. Dist. LEXIS 22117 at *13.

This Court recently held that where a plaintiff did not know, at the outset, the identities of the new defendants in its proposed amended complaint, but only subsequently learned their names through police reports, "[i]t was not a mistake in identity as to the three new defendants, but a failure to discover their identity." *Bristout*, 2004 U.S. Dist. LEXIS 5476 at *5. Thus, Rule 15(c)(3) did not apply, and the Court declined to permit the amendment.

No assertion of "mistake," under Rule 15(c), could be demonstrated under the facts of this case. Here, whether Plaintiff knew or did not know the identities of the Third-Party Defendants at the outset, after discovering their identities within the statute of limitations, Plaintiff failed to seek to name them timely. Plaintiff knew the identities of SFMMV, SBI, Dry Products, and CIR in December 2003—four and one-half months *before* the statute of limitations expired—when Defendant moved for leave to file a third-party complaint. Nevertheless, Plaintiff waited until four and one-half months *after* the expiration of the statute of limitations to attempt to bring suit against SFMMV, SBI, Dry Products, and CIR. Thus, Plaintiff's failure to sue them was a deliberate choice at that time, not a "mistake" within the meaning of Rule

7

15(c)(3)(B). Upon information and belief, Plaintiff failed to seek to amend with respect to SFMMV, SBI, Dry Products, and CIR because Plaintiff learned that the main Defendant had more than adequate insurance to cover any verdict Plaintiff could hope to win, and believed that the addition of more defendants would complicate the case and delay trial.

Plaintiff has not met the requirements that must be met before an amended complaint that names a new party can be deemed to relate back to the original timely complaint. Accordingly, the Court should deny Plaintiff's motion to amend with respect to SFMMV, SBI, Dry Products, and CIR.

## POINT II

## THE COURT SHOULD DENY PLAINTIFF'S MOTION
## TO AMEND AS TO DRY PRODUCTS AND CIR
## BECAUSE PLAINTIFF'S PROPOSED AMENDMENT LACKS MERIT

The Court should deny Plaintiff's Motion to Amend the Complaint, with respect to Dry Products and CIR, for two reasons: (1) neither Dry Products nor CIR has had any contacts with the State of Connecticut (Decl. Piaser ¶ 12), and (2) Dry Products and CIR are holding companies only, not "product sellers" as that term is defined in Conn. Gen. Stat. § 52-572m(a), and thus are not subject to the product liability claims Plaintiff seeks to assert against them. (Proposed Am. Compl. ¶¶ 86-127.)  Thus, the proposed amendment is without merit, and leave to amend should be denied.  *Health-Chem Corp. v. Baker*, 915 F.2d 805, 810 (2d Cir. 1990) ("Although Fed. R. Civ. P. 15(a) provides that leave to amend should be given freely when justice so requires, where . . . there is no merit in the proposed amendments, leave to amend should be denied.") (citing *Friedman v. Chesapeake & Ohio Rwy. Co. and Baltimore & Ohio Railroad Co.*, 261 F. Supp. 728, 734 (S.D.N.Y. 1966), *aff'd as to this point*, 395 F.2d 663, 664 (2d Cir. 1968) (per curiam), *cert. denied*, 393 U.S. 1016 (1969)).

A.   **The Court Should Deny Plaintiff's Motion to Amend to Add Dry Products and CIR Because Plaintiff is Unable to Establish Personal Jurisdiction Over The Holding Companies**

Where, as here, a plaintiff seeks to assert long arm jurisdiction over a foreign corporation, the plaintiff must show that both the Connecticut statute and the U.S. Constitution permit jurisdiction.  *Hardy v. Ford Motor Car*, 20 F. Supp. 2d 339, 341 (D. Conn. 1998); *Thomason v. Chemical Bank*, 234 Conn. 281, 295, 661 A.2d 595 (1995).  The Connecticut long arm statute gives courts jurisdiction over foreign corporations on claims arising out of the following activities:

>   (1) out of any contract made in this state or to be performed in this state;
>
>   (2) out of any business solicited in this state by mail or otherwise if the corporation has repeatedly so solicited business, whether the orders or offers relating thereto were accepted within or without the state;
>
>   (3) out of the production, manufacture or distribution of goods by such corporation with the reasonable expectation that such goods are to be used or consumed in this state and are so used or consumed, regardless of how or where the goods were produced, manufactured, marketed or sold or whether or not through the medium of independent contractors or dealers; or
>
>   (4) out of tortious conduct in this state, whether arising out of repeated activity or single acts, and whether arising out of misfeasance or nonfeasance.

Conn. Gen. Stat. § 33-929(f).[3]  In order for the Court's exercise of personal jurisdiction over a defendant to pass constitutional muster, "a defendant must have minimum contacts with the state of Connecticut such that maintenance of the suit does not offend traditional notions of fair play and substantial justice." *Hardy*, 20 F. Supp. 2d at 341 (citing *Int'l Shoe v. State of Washington*, 326 U.S. 310, 316 (1945)).  A plaintiff seeking to establish jurisdiction over a defendant must show that that the defendant, by some act, "purposefully avails itself of the privilege of conducting activities within the forum state." *Hanson v. Denckla*, 357 U.S. 235, 253 (1958).

In Plaintiff's proposed amended complaint, Plaintiff alleges that Connecticut's long arm statute permits the Court to exercise personal jurisdiction over Dry Products and CIR in this case. (Proposed Am. Compl. ¶¶ 16-17.)  Despite the voluminous discovery already had in this case, however, Plaintiff fails to cite any documentary evidence to support its allegations.  Moreover, Plaintiff cites no authority whatsoever in its Memorandum of Law in Support of the Plaintiff's

---

[3] While Plaintiff cites "C.G.S. § 33-393(f)" as the basis of the Court's personal jurisdiction over Dry Products and CIR, (Proposed Am. Compl. ¶¶ 16-17), this appears to be a typographical error.  In any event, the correct provision, Conn. Gen Stat. § 33-929(f), does not reach Dry Products or CIR under the facts presented here.  The alternate provision for long arm jurisdiction over foreign corporations, § 33-929(e) (providing long arm jurisdiction where a foreign corporation "transacts business in violation of section 33-920"), does not apply here either.

10

Motion to Amend the Complaint.  Finally, Plaintiff does not address the constitutional due process requirements that must be met before the Court may exercise personal jurisdiction.

Neither the long arm statute nor the U.S. Constitution permits the Court to exercise jurisdiction over Dry Products and CIR in this case.  As set forth in the factual background, the holding companies have not had any contacts with Connecticut.  In particular, the holding companies: do not have any office in Connecticut, do not have any employees in Connecticut, do not hold meetings in Connecticut, are not party to any contracts to be performed in Connecticut, have not brought any lawsuits in Connecticut and are not engaged in any other activity in Connecticut.  (Decl. Piaser ¶ 12.)  Under the facts of this case, none of the provisions of Connecticut's long arm statute could possibly be found to reach the holding companies.  In the absence of any contacts with the forum state, it cannot be said that the holding companies "purposefully availed" themselves "of the privilege of conducting activities" within Connecticut. *Hanson*, 357 U.S. at 253; *Fuehrer v. Owens-Corning Fiberglas Corp.*, 673 F. Supp. 1150 (D. Conn. 1986) (dismissing case against foreign corporation on due process grounds).  Exercising jurisdiction over the holding companies would thus not comport with constitutional requirements of due process.

Based on the forgoing, the Court should deny Plaintiff's Motion to Amend the Complaint to add Dry Products and CIR because Plaintiff has no way to establish personal jurisdiction over those entities if the amendment is permitted.

**B.     The Court Should Deny Plaintiff's Motion to Amend Because Neither Dry Products Nor CIR is a "Product Seller"**

"[A] CPLA claim can only be asserted against a 'product seller' . . . ." *Wilson v. Midway Games*, 198 F. Supp. 2d 167, 171 (D. Conn. 2002) (citing Conn. Gen. Stat. § 52-572n(a)). "Whether [a] defendant is a 'product seller' is a question of law for the court to decide." *Svege v. Mercedes-Benz Credit Corp.*, 329 F. Supp. 2d 272, 278 (D. Conn. 2004) (citing *Stanko v. Bader*, 2003 Conn. Super. LEXIS 2779 (Conn. Super. Ct. Oct 7, 2003)). "Product seller" is defined as:

> [A]ny person or entity, including a manufacturer, wholesaler, distributor or retailer who is engaged in the business of selling such products whether the sale is for resale or for use or consumption. The term "product seller" also includes lessors or bailors of products who are engaged in the business of leasing or bailment of products.

Conn. Gen. Stat. § 52-572m(a). Under the statute, "Manufacturer" is defined to include:

> [P]roduct sellers who design, assemble, fabricate, construct, process, package or otherwise prepare a product or component part of a product prior to its sale to a user or consumer. It includes a product seller or entity not otherwise a manufacturer that holds itself out as a manufacturer.

Conn. Gen. Stat. § 52-572m(e). Dry Products and CIR are only holding companies, and not "product sellers" as that term has been defined. As such, they are not subject to liability. Thus, the amendment Plaintiff seeks lacks merit, and the Court should deny Plaintiff's Motion to Amend the Complaint.

In one of the few decisions to discuss the contours of the definition of "product seller" in detail, this Court recently addressed the question of whether Mercedes Benz Credit Corp. ("MBCC") was a "'product seller' within the contemplation of Conn. Gen. Stat. § 52-572m(a) with respect to its ownership and leasing of [a vehicle referred to as the "Truck"]." *Svege*, 329 F. Supp. 2d at 273. In construing the term "product seller," the Court noted several factors that are

12

"indicative of significant involvement in bringing a product to market, including taking title to a product in the process of distribution, deriving substantial economic benefit from pre-distribution agreements, and engaging in an active advertising campaign to promote sales of the product." *Id*. at 280 (citing *Burkert v. Petrol Plus of Naugatuck, Inc.*, 216 Conn. 65, 73 (1990), which held that a trademark licensor was not a "product seller"). With those factors in mind, the court undertook a fact-specific analysis of that case, in particular with respect to certain assignment and lease agreements, and concluded that

> MBCC's critical role in developing a program to finance inventory to dealer showrooms, to promote dealer sales of Freightliner trucks to end users through programs like the Success Program, to finance trucks at retail for buyers, as well as its taking title owner and lessor status of all trucks for which it provides retail financing before the lessee is permitted to use the truck, taken collectively lead the Court to conclude that MBCC's role in putting Freightliner trucks into the stream of commerce is sufficiently developed and pervasive to justify concluding MBCC is a "product seller" for purposes of the CPLA.

*Id*. at 281. Applying a fact-specific analysis to the instant case shows that Dry Products and CIR are not "product sellers."

As set forth in the factual background, Dry Products and CIR are holding companies, and did not participate in any way whatsoever in the manufacturing, design, engineering, assembly, fabrication, construction, processing, packaging, preparation, shipping or sale of the bakery machine or any of its parts (or any other machinery or product sold in the market place). (Decl. Piaser ¶¶ 3-4.) Dry Products and CIR own stock in different industries, including media, energy and automotive parts, but do not participate in the operations of the companies that they own. (Decl. Piaser ¶ 3.) The activities of Dry Products and CIR consist entirely in the financial activity involved in managing a portfolio of stocks in such companies. (Decl. Piaser ¶ 3.)

With respect to the factors that are "indicative of significant involvement in bringing a product to market," Dry Products and CIR have never held title to the bakery machine or any of

13

its parts, never been the lessor or bailor of the bakery machine or any of its parts, never financed the sale of the bakery machine or any of its parts, never held a security or other interest in the bakery machine or any of its parts, never advertised the bakery machine or any of its parts or otherwise exercised direct control over the bakery machine or any of its parts.  (Decl. Piaser ¶ 4.) Under the facts of this case, the court must find that Dry Products and CIR are not "product sellers" within the meaning of § 52-572m(a).

Further support for the proposition that the holding companies are not "product sellers" is found in *Iragorri v. United Technologies Corp.*, 285 F. Supp. 2d 230 (D. Conn. 2003), *vacated in part on reconsideration*, 314 F. Supp. 2d 110 (D. Conn. 2004).  In *Iragorri*, the court addressed whether a parent corporation, Otis Elevator Company ("Otis"), was a "product seller" by virtue of the 99% ownership interest it held in its Brazilian subsidiary.  The court rejected the plaintiffs' argument that Otis should be liable as a "product seller" because it managed and controlled the Brazilian subsidiary.  Instead, the court relied on evidence that showed the subsidiary had: (1) its own board of directors, (2) its own working capital, (3) its own facilities, and (4) its own employees, paid from its own funds.  *Iragorri*, 285 F. Supp. 2d at 234.  With respect to the elevator in issue, the court found that the subsidiary was the "product seller," rather than Otis. The evidence on which the court relied consisted of an order slip written in Portuguese and an affidavit from the head of engineering at the Brazilian subsidiary stating that the Brazilian subsidiary designed and produced the elevator and that none of the elevator parts were produced by Otis.  *Id.* at 237 n.3.

Here, neither Dry Products nor CIR has any role in the day-to-day management of FMMV, SFMMV or SBI.  (Decl. Piaser ¶ 5.)  They do not have (and have never had) any director, officer, or employee in common with FMMV, SFMMV or SBI.  (Decl. Piaser ¶¶ 6, 9.)

Moreover, they have never agreed to assume liabilities of FMMV, SFMMV or SBI. (Decl. Piaser ¶ 7.) The holding companies maintain (and have always maintained) separate offices from each other and from FMMV, SFMMV and SBI. (Decl. Piaser ¶ 10.) In addition, they maintain separate assets and accounts from each other and from FMMV (and prior to the merger and renaming from SFMMV and SBI). (Decl. Piaser ¶ 11.) Finally, neither the name nor the trademark of either of the holding companies appears (or has ever appeared) on the bakery machine or products sold by SFMMV, SBI or FMMV (or any other products). (Decl. Piaser ¶ 8.)

As in *Iragorri*, the purchase agreement—which is written in English, rather than Italian—is between the main Defendant, Sig Simonazzi North America, Inc., and Chaves Bakery, and not the holding companies. (Decl. Mazer, Ex. 4.) Dry Products and CIR are not mentioned in that agreement. Moreover, in its response to Sig Simonazzi North America, Inc.'s first set of interrogatories, FMMV states that it "took care of design and installation at customer's premises of the Bakery Machine," and provides "a detailed prospectus which identifies [the parts of the Bakery Machine] item by item the name of the designer, the manufacturer / supplier and who took care of installation." (Decl. Mazer ¶ 6 & Ex. 5 (response to interrogatory 3).) Neither Dry Products nor CIR is included in that prospectus. (Decl. Mazer ¶ 6.) As noted *supra* at page 3, the allegations Plaintiff makes in its proposed pleading, i.e., that Dry Products and CIR "charged" Chaves Bakery an amount of money for the bakery machine, (Proposed Am. Compl. ¶¶ 87, 108) are demonstrably incorrect, and it would be futile for the Court to allow them.

In summary, the facts of this case demonstrate that neither Dry Products nor CIR is involved in any way in moving the bakery machine through the stream of commerce. Unlike *Svege*, no lease or other agreements that may indicate ownership or title in the product in issue

15

exist here. Neither Dry Products nor CIR is, or has ever been, a title owner or lessor of the bakery machine. Neither Dry Products nor CIR promotes the sale of the bakery machine, and neither monitors the production, manufacture, or sale of the bakery machine. As in *Iragorri*, Dry Products and CIR do not produce or sell the bakery machine or any of its parts. They are strictly stockholders that do not exercise any operational control or decision making authority with respect to the bakery machine. As such, the holding companies are not "product sellers" within the meaning of Conn. Gen. Stat. § 52-572m(a), and Plaintiff's proposed amendment to add them as defendants in the main action lacks merit as to them, and should be denied.

## CONCLUSION

Plaintiff's Motion to Amend the Complaint to add SFMMV, SBI, Dry Products, and CIR should be denied in its entirety.

>THE THIRD-PARTY DEFENDANTS,
>SASIB FOOD MACHINERY MV, S.P.A.,
>SASIB BAKERY ITALIA, S.P.A.,
>DRY PRODUCTS, S.P.A., AND
>COMPAGNIE INDUSTRIALI RIUNITE,
>S.P.A.
>
>By: _____
>   Deborah S. Russo (ct 18818)
>   DAY, BERRY & HOWARD LLP
>   CityPlace I
>   Hartford, Connecticut 06103-3499
>   (860) 275-0100
>   (860) 275-0343 (fax)
>   dsrusso@dbh.com
>
>   John R. Horan, Esq.
>   FOX HORAN & CAMERINI LLP
>   Fed. Bar #ct
>   825 Third Avenue
>   New York, New York 10022
>   (212) 480-4800
>   Their Attorneys

Of counsel:   Jonathan Mazer, Esq.
              Alison M. Rende, Esq.

## CERTIFICATION

This is to certify that on this 29th day of October, 2004, I hereby mailed a copy of the foregoing first class mail, postage prepaid, to:

| | |
|---|---|
| Joseph G. Fortner, Jr. | Richard J. Sullivan, Esq. |
| HALLORAN & SAGE, LLP | SULLIVAN & SULLIVAN, LLP |
| One Goodwin Square | 31 Washington Street |
| 225 Asylum Street | Wellesley, MA 02481 |
| Hartford, CT 06103 | |

_____

Deborah S. Russo