UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BILL L. GOUVEIA AS ADMINISTRATOR OF THE ESTATE OF JOSE GUERRA, | : | |
| Plaintiff, | : | |
| v. | : | CIVIL ACTION NO. 3:03 CV 597(MRK) |
| SIG SIMONAZZI NORTH AMERICA, INC. AS SUCCESSOR IN INTEREST BY MERGER TO SASIB NORTH AMERICA, INC., AS SUCCESSOR IN INTEREST BY MERGER TO SASIB BAKERY NORTH AMERICA, INC., | : | |
| Defendant. | : | |
| SIG SIMONAZZI NORTH AMERICA, INC., | : | |
| Third-Party Plaintiff, | : | |
| v. | : | |
| SASIB FOOD MACHINERY MV, S.P.A., SASIB BAKERY ITALIA, S.P.A., DRY PRODUCTS, S.P.A., AND COMPAGNIE INDUSTRIALI RIUNITE, S.P.A., | : | |
| Third-Party Defendants. | : | January 18, 2005 |

**THIRD-PARTY DEFENDANTS' MEMORANDUM OF LAW IN OPPOSITION TO THIRD-PARTY PLAINTIFF'S MOTION FOR LEAVE TO AMEND THIRD-PARTY COMPLAINT**

**Preliminary Statement**

Third-Party Plaintiff Sig Simonazzi North America, Inc. has moved for leave to amend the Third-Party Complaint to add claims imposing liability for an alleged violation of the Uniform Fraudulent Transfer Act and seeking to "pierce the corporate veil" on an alter ego

1

theory of liability.  Third-Party Plaintiff also seeks to add Food Machinery Medium Volume, S.p.A. ("Food Machinery") as a third-party defendant.[1]  Third-Party Defendants Sasib Food Machinery MV, S.p.A., Sasib Bakery Italia, S.p.A., Dry Products, S.p.A., and Compagnie Industriali Riunite, S.p.A. oppose Third-Party Plaintiff's motion on the ground that the amendments would be futile.  *Foman v. Davis*, 371 U.S. 178, 182 (1962) (stating "futility of amendment" as a reason to deny leave to amend).

The amendments Third-Party Plaintiff seeks are futile in the following respects.  The Connecticut long-arm statute, by its terms, does not provide a basis for the Court to assert personal jurisdiction over the existing Third-Party Defendants or the party it seeks to add, Food Machinery, because Third-Party Plaintiff is not a resident of Connecticut, nor does it have its usual place of business in Connecticut.  Conn. Gen. Stat. § 33-929(f).  As such, Third-Party Plaintiff may not invoke Connecticut's long-arm statute.  If the Court finds, however, that Third-Party Plaintiff may avail itself of Connecticut's long-arm statute by way of the state impleader statute, it must nevertheless deny Third-Party Plaintiff's motion.  Third-Party Plaintiff seeks to add claims that are independent of its indemnification and contribution claims, and thus impermissible under Connecticut's impleader statute.  Conn. Gen. Stat. § 52-102a.  Thus, the Court should deny Third-Party Plaintiff's Motion for Leave to Amend the Third-Party Complaint because the amendments Third-Party Plaintiff seeks to make are futile.

---

[1]   Third-Party Plaintiff "seeks to amend its Third-Party Complaint to include Food Machinery as an *additional* defendant."  Third-Party Pl.'s Mem. Supp. Mot. Leave to Amend Third-Party Compl. at 3 (emphasis added).  As Third-Party Plaintiff points out, however, Food Machinery is the result of a name change by Sasib Food Machinery MV, S.p.A.  *Id.* at 2 ("Sasib Food changed its name to Food Machinery Medium Volume, S.p.A. . . .").  Thus, the relief sought by Third-Party Plaintiff may be achieved by changing the name of a party already in the action, not adding a new party.

## ARGUMENT

### POINT I

### THE COURT SHOULD DENY THIRD-PARTY PLAINTIFF'S MOTION BECAUSE THE COURT LACKS PERSONAL JURISDICTION OVER THIRD-PARTY DEFENDANTS AS A MATTER OF LAW

In its proposed amended Third-Party Complaint, Third-Party Plaintiff alleges that "[t]he Court has personal jurisdiction over the Third-Party Defendants pursuant to section 33-929(f) of the Connecticut General Statutes . . . ." Proposed Am. Compl. ¶ 8, attached as Ex. B to Third-Party Pl.'s Mem. Supp. Mot. Leave to Amend Third-Party Compl. ("Am. Compl.").[2] Section 33-929(f) provides in pertinent part:

> Every foreign corporation shall be subject to suit in this state, by a resident of this state or by a person having a usual place of business in this state [under certain enumerated circumstances] . . . .

Conn. Gen. Stat. § 33-929(f).[3] Thus, by its terms, section 33-929(f) limits the scope of persons that may invoke the long-arm statute to residents or those that have a usual place of business in Connecticut. Third-Party Plaintiff is a Delaware corporation with its principal place of business in Plano, Texas, and has not alleged that it is a resident of or has a usual place of business in

---

[2] Third-Party Plaintiff relies on the same jurisdictional provision in the original Third-Party Complaint. Third-Party Compl. ¶ 7. If the Court should find that section 33-929(f) does not encompass Third-Party Plaintiffs as a matter of law, the same would hold with respect to the original Third-Party Complaint. Third-Party Defendants do not waive and expressly reserve their right to assert the defense of lack of personal jurisdiction (based on the argument asserted here and also based on lack of contact with the forum state) in subsequent filings, including a renewed motion for summary judgment, pursuant to the Court's order of December 10, 2004. The arguments with respect to contacts with the forum state are not asserted here and are reserved because the parties are presently engaged in discovery regarding such alleged contacts.

[3] A foreign corporation is a "person" under the statute. Conn. Gen. Stat. §§ 33-602(19), (12), (13).

3

Connecticut. Am. Compl. ¶ 1. As such, Third-Party Plaintiff may not avail itself of Connecticut's long-arm statute to assert jurisdiction over the foreign Third-Party Defendants.

The conclusion that only residents of Connecticut or persons with a usual place of business in Connecticut may invoke of Connecticut's long-arm statute is supported by Connecticut Supreme Court precedent. The pertinent language of 33-929(f) is identical to that of its predecessor statute, § 33-411(c), which was examined by the Court in *Wilkinson v. Boats Unlimited, Inc.*, 236 Conn. 78, 670 A.2d 1296 (1996). Construing the plain language of the statute, the *Wilkinson* Court held that the long-arm statute "expressly requires an individual plaintiff who does not have 'a usual place of business in this state' to have resided here at the time when the action was brought." *Id*. at 88; *accord Mednet, MPC Corp. v. United Healthcare, Inc.*, 1996 U.S. Dist. LEXIS 22338, *8 (D. Conn. 1996) (Ex. A) ("[Plaintiff] may not invoke [now section 33-929(f)] because [plaintiff] is not a resident of Connecticut and does not have its usual place of business in Connecticut."). The *Wilkinson* holding was reiterated by the District Court of Connecticut in *Maguire v. Misomex of North America*, 1997 U.S. Dist. LEXIS 23511, *9 (D. Conn. 1997) (Ex. B). There, a non-resident plaintiff failed to meet the long-arm statute's requirement of residence or usual place of business in Connecticut and thus "[could] not avail himself of [now subsection (f)] of the Connecticut long arm statute to confer jurisdiction over [the defendant]." *Id*. Because the defendant was beyond the reach of the long-arm statute, the court did not conduct the second part of the personal jurisdiction inquiry, the due process analysis. *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 222-23 (2d Cir. 1963) (en banc) (first part of inquiry is whether long-arm statute reaches defendant; second part is minimum contacts due process analysis).

The holdings stated in *Wilkinson* and *Maguire* comport with Connecticut Supreme Court case law requiring that statutory language that is clear on its face be given effect in accordance with legislative intent. "In Connecticut, the 'fundamental objective [of statutory construction] is to ascertain and give effect to the apparent intent of the legislature," starting with the plain language of the statute. *Fenton v. United Tech. Corp.*, 204 F. Supp. 2d 367, 371 (D. Conn. 2002) (bracketing as in original) (citing *State v. Gibbs*, 254 Conn. 578, 601, 758 A.2d 327 (2000); *King v. Bd. of Educ. of Watertown*, 203 Conn. 324, 524 A.2d 1131 (1987)). "When the words of a statute are plain and unambiguous, we need look no further for interpretive guidance because we assume that the words themselves express the intention of the legislature." *Caltabiano v. Planning and Zoning Comm'n of the Town of Salem*, 211 Conn. 662, 666, 560 A.2d 975 (1989).

The Connecticut Supreme Court has not addressed the issue of whether section 33-929(f) authorizes a non-resident third-party plaintiff without a usual place of business in Connecticut to assert personal jurisdiction over a foreign corporation in a third-party action.[4] Where a federal court in a diversity case is faced with a question of state law on which the state's highest court has not spoken, "the federal court should determine what it believes that state's highest court would find if the issue were before it." *Plummer v. Lederle Labs., Div of Am. Cyanamid Co.*, 819 F.2d 349, 355 (2d Cir. 1987), *cert. denied* 484 U.S. 898 (1987) (citation omitted). "In making this prediction [the Court] give[s] the 'fullest weight' to pronouncements of the state's highest court, while giving 'proper regard' to relevant rulings of the state's lower courts. . . . [The Court] may also consider decisions in other jurisdictions on the same or analogous issues."

---

[4] The Court might find this to be an appropriate question to certify to the Connecticut Supreme Court for final resolution. "Connecticut law permits a federal district court to certify questions of state law directly to the Connecticut Supreme Court." *Jagger v. Mohawk Mountain Ski Area, Inc.*, 2002 U.S. Dist. LEXIS 20948, *2 (D. Conn. 2002) (Ex. C) (citing Conn. Gen. Stat. § 51-199b(d)).

*Gibbs-Alfano v. The Ossining Boat & Canoe Club, Inc.*, 281 F.3d 12, 18-19 (2d Cir. 2002) (internal quotation and citation omitted). No Connecticut intermediate appellate court has addressed whether a non-resident, unlicensed third-party plaintiff must show that it is a "resident" or one having "a usual place of business" in Connecticut in order to invoke section 33-929(f). Thus, in the absence of controlling case law authority, the Court gives proper regard to any lower state court decisions that may have considered the issue presented here.

In *Connecticut General Life Insurance Co. v. SVA, Inc.*, 743 F. Supp. 107 (D. Conn. 1990), the court addressed whether the third-party plaintiff, a Massachusetts corporation, could bring a third-party action against another Massachusetts corporation for indemnification and contribution by relying on Connecticut's long-arm statute. Noting that "[a]s a plaintiff, [the third-party plaintiff] would be precluded from bringing an action against [the third-party defendant] under Connecticut's long-arm statute," the court nonetheless found that "the inability of a plaintiff to invoke [the long-arm statute] does not bar the third-party plaintiff from impleading the third-party defendant in an action already properly commenced." *Conn. Gen.*, 734 F. Supp. at 109 (construing the long-arm statute to be "directed toward assertions of original jurisdiction – not extensions of the existing jurisdiction to third-parties.") (quoting *Dalheim v. Sequemat, Inc.*, Civil No. N-85-134 (PCD) (D. Conn. 1986)). Rather, the court found that the question was "whether the third-party plaintiff may implead a foreign corporation" under the state impleader rule, Conn. Gen. Stat. § 52-102a. Because the foreign third-party plaintiff could implead another foreign corporation on a claim for indemnification and contribution under Conn. Gen. Stat. § 52-102a, the court concluded it had personal jurisdiction over the third-party defendants.

6

Citing *Connecticut General* with approval, the court in *Winkelman v. Dohm*, 1992 Conn. Super. LEXIS 1130 (Apr. 27, 1992) (Ex. D) stated that with respect to personal jurisdiction over third-party defendants "[t]he relevant statute is not Section [33-929(f)] but rather Section 52-102a (impleading of third party defendant) . . . ." *Winkelman*, 1992 Conn. Super LEXIS 1130, at *4. The *Winkelman* court held that "[w]here . . . there is jurisdiction of the underlying claim, there is personal jurisdiction over the impleaded parties." *Id*. (citing *Conn. Gen.*, 743 F. Supp. at 109); *Nationwide Mut. Ins. v. Davidson*, 1999 Conn. Super. LEXIS 2167, *4-5 (Aug. 3, 1999) (same) (citing *Winkelman*) (Ex. E).

The reasoning in *Connecticut General* and the cases that have followed it is not persuasive. Indeed, the court's holding in *Connecticut General* has been characterized as "highly questionable" due to "[t]he confusion of state joinder and long-arm provisions in this decision . . . ." 6 Wright & Miller, Fed. Prac. & Proc. § 1445 n.1 (2004 pocket part) ("In [*Connecticut General*] . . . the court ruled that personal jurisdiction was properly asserted over the third-party defendant even though it appeared outside the state long-arm statute because Connecticut's impleader rules would authorize joinder. The confusion of state joinder and long-arm provisions in this decision makes the holding highly questionable.").

The *Connecticut General* and *Winkelman* findings effectively convert the impleader statute, § 52-102a, from a procedural mechanism, by which a defendant in the main action may implead a party who is or may be liable to the defendant, to a substantive jurisdictional statute. This interpretation runs counter to Connecticut Supreme Court precedent, which holds that section 52-102a "is procedural in nature" and "does not affect [an impleaded person's] substantive rights." *Schurgast v. Schumann*, 156 Conn. 471, 487, 242 A.2d 695 (1968); *Senior v. Hope*, 156 Conn. 92, 97, 239 A.2d 486 (1968); *see also Demelis v. Lyon & Billard Co.*, 2000

7

Conn. Super. LEXIS 21, *6 (Jan. 3, 2000) (Ex. F) ("As is the case with 52-102a, the purpose and effect of 52-577a(b) [the statute of limitations for impleading parties in product liability actions] are to accelerate the accrual of the right to assert a claim against the impleaded person. It is procedural in nature and does not affect substantive rights.").

Section 52-102a does not contain any language indicating that persons properly impleaded will be subject to the jurisdiction of the courts. On the contrary, the Connecticut Supreme Court has held that "a third party defendant [is armed] with the full panoply of procedural options available to address . . . the claim of the third party plaintiff . . . ." *Malerba v. Cessna Aircraft Co.*, 210 Conn. 189, 195, 554 A.2d 287 (1989) (interpreting Practice Book § 117 (now § 10-11), which tracks the language of § 52-102a); *see also Security Capital Management, Inc. v. De Monico*, 1990 Conn. Super. LEXIS 456, *5 (June 12, 1990) (Ex. G) (noting counterpart statute FRCP 14 should be "liberally applied, at least where there [are] no jurisdictional objections") (citation omitted). Accordingly, third-party defendants may properly object to claims asserted against them on the basis that the court lacks personal jurisdiction over them.

The reasoning in *Connecticut General* cannot be squared with the plain language of section 33-929(f), section 52-102a, or the case law interpreting those sections, and should not be followed in this case. By removing the application of the long-arm statute from the personal jurisdiction analysis where a foreign corporation has been sued in a third-party action, *Connecticut General*'s holding cuts against well-settled case law requiring that a federal court in a diversity case first determine whether the relevant state long-arm statute reaches the foreign defendant, and then, if so, whether that foreign defendant meets the "minimum contacts" requirement to satisfy constitutional due process. *Arrowsmith*, 320 F.2d at 222.

The reasoning in *F.L. Crane Co. v. Cessna Aircraft Co.*, 73 F.R.D. 384 (N.D. Miss. 1976) is persuasive. In *F.L. Crane*, the defendant was a Kansas corporation, which had been sued in Mississippi in a product liability action. The defendant, in turn, instituted a third-party action for indemnity. The third-party defendant was a Texas corporation. The defendant/third-party plaintiff attempted to assert personal jurisdiction over the third-party defendant by way of Mississippi's long arm statute. The third-party defendant moved to dismiss for lack of personal jurisdiction, which motion the court granted. Examining the plain language of the statute, the court stated: "The statute expressly provides that it applies to a nonresident 'who shall commit a tort in whole or in part in this state [Mississippi] against a resident of this state,'" and that "by the very terms of the statute its protection is available only to residents of [Mississippi]." *Id*. at 386; *see also Breeland v.Hide-A-Way Lake, Inc.*, 585 F.2d 716, 720-21 (5th Cir. 2001) (citing *F.L. Crane Co.* with approval in context of an action between plaintiff and defendant). The third-party plaintiff argued that it would be deprived of the "valuable rights which it enjoys pursuant to the Federal Rules of Civil Procedure to seek indemnity . . . against the real party responsible for plaintiffs' loss, and to have the rights of all interested parties adjudicated in one action, thus saving the time and energy of the parties, including the Court." *Id*. The court was unpersuaded, finding that the statute by its terms had been enacted for the benefit of its residents only. *Id*. 387. Similarly here, section 33-929(f) expressly requires that a party invoking long-arm jurisdiction to sue a foreign corporation must be a resident of Connecticut or have a usual place of business in Connecticut. The language of the statute is clear. Thus, the Third-Party Plaintiff, a non-resident without a usual place of business in Connecticut, should not be permitted to avail itself of the Connecticut long-arm statute.

9

If faced with the issue of whether section 33-929(f) confers personal jurisdiction over a foreign corporation in a third-party action brought by a non-resident third-party plaintiff without a usual place of business in Connecticut, the Connecticut Supreme Court would likely apply the plain meaning rule. *Caltabiano*, 211 Conn. at 666; *Gibbs*, 254 Conn. at 601. In *Wilkinson*, the Court found that the phrase "resident of this state or . . . a person having a usual place of business in this state" as it appeared in the predecessor to section 33-929(f) expressly required that the party invoking the statute be a resident of Connecticut or have its usual place of business there. The plain language of section 33-929(f), the Connecticut's reasoning in *Wilkinson* and other persuasive authority guide the Court to one interpretation: the third-party plaintiff must be a resident of or maintain a usual place of business in Connecticut to hail foreign corporations into court in Connecticut. Third-Party Plaintiff is not a Connecticut resident, nor does it maintain a usual place of business there. Thus, it may not invoke the long-arm statute to assert personal jurisdiction over Third-Party Defendants or the party it seeks to add, and the Court should deny leave to make the proposed amendments as futile.

# POINT II

## THE COURT SHOULD DENY THIRD-PARTY PLAINTIFF'S MOTION BECAUSE IT IMPROPERLY SEEKS TO ADD CLAIMS THAT ARE INDEPENDENT OF THE INDEMNIFICATION AND CONTRIBUTION CLAIMS

Third-Party Defendants maintain that Third-Party Plaintiff cannot establish, as a matter of law, that the Court has personal jurisdiction over the Third-Party Defendants or Food Machinery with respect to any claim. However, if the Court should agree with the court's reasoning in *Connecticut General* and find that the Connecticut impleader statute is jurisdictional, i.e., a substantive provision that governs the exercise of personal jurisdiction over third-party defendants, it follows that the Court must apply section 52-102a in determining whether independent claims may be joined with indemnification and contribution claims in a third-party action. *Erie R. Co. v. Tompkins*, 304 U.S. 64 (1938).

Under Connecticut law, the proposed amendment adding a claim against the Third-Party Defendants under the Uniform Fraudulent Transfer Act ("UFTA") is futile because claims that are independent of an indemnification or contribution claim may not be added to a third-party complaint.[5] In *Great Spring Water v. Porter Chadburn, Inc*., 1998 Conn. Super. LEXIS 2378 (Aug. 24, 1998) (Ex. J), the third-party plaintiff asserted a breach of contract claim in the third-

---

5     Third-Party Plaintiff has not properly pleaded the UFTA cause of action because it has failed to allege that it has a right to payment that "arose *before* the [allegedly fraudulent] transfer was made." Conn. Gen. Stat. §§ 52-552f(a) & 52-552e(a) (emphasis added); *Schultz v. Direct Mail Serv*., 1996 Conn. Super. LEXIS 278, *7 (Feb. 1, 1996) (Ex. H) ("A literal reading of the definitions provided in [UFTA] and the requirements set forth [therein] demonstrate[s] that the plaintiff is required to allege that he is a person who has a right to payment . . . which arose *before* the transfer was made.") (emphasis in original); *accord Faillace v. Soderholm*, 1997 Conn. Super. LEXIS 2857 (Oct. 23, 1997) (Ex. I). To have standing as a "creditor" under UFTA, a party must have a right to payment. Conn. Gen. Stat. § 52-552b(3) & (4). Here, Third-Party Plaintiff flatly asserts Third-Party Defendants are "obligated" to it for indemnification, Am. Compl. ¶ 94, but provides no indication of how it will show that a claim for indemnification could have arisen prior to the single allegedly fraudulent transfer in June 2002 identified by Third-Party Plaintiff in its brief. Third-Party Pl.'s Mem. Supp. Mot. Leave to Amend Third-Party Compl. at 4.

party complaint, which arose from the same facts as alleged in the original complaint. The third-party defendant moved to strike the breach of contract claim. The court granted the motion. Examining the text of section 52-102a, the court reiterated the Connecticut Supreme Court's conclusion that "[t]he language of 52-102a . . . refers to causes of action for indemnity and contribution." *Great Spring Water*, 1998 Conn. Super. LEXIS 2378, at *4 (citing *Malerba*, 210 Conn. at 195). Noting that the language of 52-102a incorporates the language of Federal Rule of Civil Procedure 14(a), but not "the accompanying language of Rule 18, which allows for the joinder of any claims against a properly impleaded party," the court agreed with a line of cases that "prohibit[ed] the joining of any claims other than indemnification or contribution." *Id.* at 6 (citing *Parkridge Condominium Ass'n, Inc. v. Parkridge Trust*, 1991 Conn. Super. LEXIS 1884 (Aug. 22, 1991); *State v. Kement*, 12 Conn. L. Trib., No. 7, 20 (1986)). The court concluded that the third-party plaintiff's breach of contract claim "does not attempt to pass on liability to [the third-party defendant]. It attempts to raise an independent claim and is an inappropriate use of the impleader statute." *Id.*

Third-Party Plaintiff also seeks to assert another independent claim. While failing to use the phrase "pierce the corporate veil" in its proposed amended complaint, Third-Party Plaintiff plainly seeks to assert such a claim. *See e.g.*, Am. Compl. ¶¶ 5, 6; Third-Party Pl.'s Mem. Supp. Mot. Leave to Amend Third-Party Compl. at 4 (discussing elements of claim to pierce the corporate veil). Indeed, the true purpose of the amendment is clear from Third-Party Plaintiff's brief with respect to the proper scope of discovery. *See* Defendant/Third-Party Pl.'s Mem. Supp. Leave to Conduct Discovery Regarding Third-Party Defs.' Assets, Corporate Structure, and Governance, attached hereto as Ex. K, at 10 (under section headed "Corporate Veil," stating

12

"Court[s] recognize that 'cases involving an attempt to pierce the corporate veil are complicated' . . .") (citation omitted).

A third-party action is not the proper vehicle for asserting a claim to pierce the corporate veil. In *Security Capital Management, Inc. v. De Monico*, 1990 Conn. Super. LEXIS 456 (June 12, 1990) (Ex. G), the defendant moved to implead the principals and sole owners of the plaintiff corporation because they were allegedly liable to the defendant for the plaintiff's claim against him. The court denied the defendant's motion, reasoning that in order to prevail, the defendant would have to establish personal liability on the part of the principals/owners, which would involve piercing the corporate veil to obtain recovery. "This action would constitute a separate and distinct 'direct' cause of action against the third-party defendants and would not impose liability upon them as a result of the facts proven concerning the issues of the original trial." *Id*. at 8 (citing *Beaudoin v. Town Oil Co*., 207 Conn. 575, 577-78, 581 n.3, 542 A.2d 1124 (1988) (upholding trial court's striking of third-party complaint where claim was entirely independent of main action)). As such, it was an improper use of third-party procedure to assert a claim to pierce the corporate veil.

Here, an amendment to add a claim under the theory of alter ego/piercing the corporate veil would not only be improper under the reasoning of *Security Capital* discussed above, but would "prejudice the rights of plaintiff in the original action," the Estate of Jose Guerra, by unnecessarily delaying trial of the issues in the main product liability action and "introduc[ing] complexity into the disposition of [the] pending action[]," which also provides a basis to deny the motion for leave to amend. *Security Capital*, 1990 Conn. Super. LEXIS 456, at *6. Further casting doubt on the merit of the amendment is the fact that Third-Party Plaintiff has not attached any of the documentation it alleges supports such a claim – that is, the very evidence to which

13

Third-Party Plaintiff wishes to "conform" the pleadings.  Third-Party Pl.'s Mem. Supp. Mot. Leave to Amend Third-Party Compl. at 7.

The complaint in the main action alleges that the Defendant/Third-Party Plaintiff is liable as a seller of certain bakery machinery under Connecticut's Product Liability laws.  As with the claims sought to be added in *Great Spring Water* and *Security Capital*, the UFTA claim does not attempt to pass on liability, but rather seeks to institute a trial within a trial on an entirely separate claim.  The same holds for the Third-Party Plaintiff's attempt to include an alter ego theory to justify piercing the corporate veil.  The language of section 52-102a permits causes of action for indemnification and contribution, but does not permit the joining of additional claims. *Malerba*, 210 Conn. at 195.  As such, the Court should deny leave to add the independent claims against the Third-Party Defendants.

## CONCLUSION

For the reasons discussed above, the Court should deny the Third-Party Plaintiff's Motion for Leave to Amend the Third-Party Complaint because the amendments that Third-Party Plaintiff seeks to make are futile.

Dated: Hartford, Connecticut
       January 18, 2005

                          Respectfully submitted,

                          THE THIRD-PARTY DEFENDANTS,
                          SASIB FOOD MACHINERY MV, S.P.A.,
                          SASIB BAKERY ITALIA, S.P.A.,
                          DRY PRODUCTS, S.P.A., AND
                          COMPAGNIE INDUSTRIALI RIUNITE,
                          S.P.A.

                          By: _____
                               Deborah S. Russo (ct 18818)
                               DAY, BERRY & HOWARD LLP
                               CityPlace I
                               Hartford, Connecticut 06103-3499
                               (860) 275-0100
                               (860) 275-0343 (fax)
                               dsrusso@dbh.com

                               John R. Horan (ct JHR8238)
                               Jonathan Mazer (ct 26939)
                               FOX HORAN & CAMERINI LLP
                               825 Third Avenue
                               New York, New York 10022
                               (212) 480-4800

                               Their Attorneys

Of counsel:    Alison M. Rende

**CERTIFICATION**

  This is to certify that on this 18th day of January, 2005, I hereby mailed a copy of the foregoing to:

| | |
|---|---|
| Joseph G. Fortner, Jr., Esq. | Richard J. Sullivan, Esq. |
| HALLORAN & SAGE, LLP | SULLIVAN & SULLIVAN, LLP |
| One Goodwin Square | 31 Washington Street |
| 225 Asylum Street | Wellesley, MA 02481 |
| Hartford, CT 06103 | |

               _____
               Deborah S. Russo