LEXSEE 1996 US DIST LEXIS 22338

MEDNET, MPC CORPORATION v. UNITED HEALTHCARE, INC., ET AL.

Civil No. 3:95cv2723(AHN)

UNITED STATES DISTRICT COURT FOR THE DISTRICT OF CONNECTICUT

*1996 U.S. Dist. LEXIS 22338*

**August 14, 1996, Decided
August 15, 1996, Filed**

**DISPOSITION:** [*1] United's motion to dismiss [doc. # 11] GRANTED. Action DISMISSED with respect to United Healthcare, Inc.

**LexisNexis(R) Headnotes**

**COUNSEL:** For MEDNET, MPC CORP, plaintiff: James R. Hawkins, II, Patrick J. McHugh, Finn Dixon & Herling, Stamford, CT.

For MEDNET, MPC CORP, plaintiff: Debra F. Salz, Michael R. Griffinger, Crummy, Del Deo, Dolan, Griffinger & Vecchione, Newark, NJ.

For MEDNET, MPC CORP, plaintiff: David H. Wollmuth, Roberts, Sheridan & Kotel, New York, NY.

For UNITED HEALTHCARE, INC., defendant: Maurice T. Fitzmaurice, Reid & Riege, P.C., Hartford, CT USA.

For VALUE HEALTH, INC, VALUERX PHARMACY PROGRAM, INC, defendants: Daniel L. Fitzmaurice, Michael A. Bucci, Day, Berry & Howard, Hartford, CT USA.

For SPECTERA, INC, defendant: Maurice T. Fitzmaurice, Michael Thomas Wade, Reid & Riege, P.C., Hartford, CT USA.

For SPECTERA, INC, defendant: Michael D. Berman, Mark D. Dopkin, Kaplan, Heyman, et al., Baltimore, MD.

**JUDGES:** Alan H. Nevas, United States District Judge.

**OPINIONBY:** Alan H. Nevas

**OPINION:**

RULING ON MOTION TO DISMISS

The plaintiff, Mednet, MPC Corporation ("Mednet"), brings this breach of contract and tortious business interference action against the defendants United Healthcare, [*2] Inc. ("United"), n1 Value Health, Inc. ("Value Health"), and ValueRX Pharmacy Program, Inc. ("ValueRX") based on diversity of citizenship.

n1 Effective January 1, 1996, United changed its name to Spectera, Inc. Because the case file retains the old name, the court refers to Spectera as United to avoid confusion.

Presently pending is United's Motion to Dismiss pursuant to *Rule 12(b)(2), Fed. R. Civ. P.*, for lack of personal jurisdiction. For the following reasons, United's motion [doc. # 11] is GRANTED.

STANDARD OF REVIEW

In ruling on a motion to dismiss for lack of personal jurisdiction, pursuant to *Rule 12(b)(2), Fed. R. Civ. P.*, the court's task is clear. In a diversity action, a federal district court looks to state law to determine if there is personal jurisdiction over a foreign corporation. *Arrowsmith v. United Press Int'l, 320 F.2d 219, 231 (2d Cir. 1963); Fuehrer v. Owens-Corning Fiberglas Corp., 673 F. Supp. 1150, 1153 (D. Conn. 1986); Air Kaman, Inc. v. Penn-Aire Aviation Inc., 542* [*3] *F. Supp. 2, 3 (D. Conn. 1981)*. This requires a two tiered inquiry: 1)

Case 3:03-cv-00597-MRK    Document 122-2    Filed 01/18/2005    Page 2 of 5

Page 2
1996 U.S. Dist. LEXIS 22338, *

does the Connecticut long-arm statute reach the foreign corporation; and, if so, 2) does the statute's jurisdictional reach as applied to that foreign corporation meet the "minimum contacts" requirement to satisfy constitutional due process? *Fuehrer, 673 F. Supp. at 1153; Air Kaman, 542 F. Supp. at 3; McFaddin v. National Executive Search, Inc., 354 F. Supp. 1166, 1168 (D. Conn. 1979).* See also *World Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297, 62 L. Ed. 2d 490, 100 S. Ct. 559 (1980); International Shoe Co. v. Washington, 326 U.S. 310, 316, 90 L. Ed. 95, 66 S. Ct. 154 (1945).*

In a motion to dismiss for lack of personal jurisdiction, moreover, plaintiff bears the burden of proving the requisite facts that establish proof of personal jurisdiction. *Air Kaman, 542 F. Supp. at 4; Bowman v. Grolsche Bierbrouwerij B.V., 474 F. Supp. 725, 728 (D. Conn. 1979).* In a diversity action, however, the plaintiff need make only a prima facie showing, through affidavits and other materials, that the two-tiered inquiry is satisfied. *Marine Midland Bank, N. A. v. Miller, 664 F.2d 899, 904* [*4] *(2d Cir. 1981).*

FACTS

Mednet is a Nevada corporation engaged in the business of providing mail order prescription services and has its principal place of business in Nevada. (See First Am. Compl. P 1.)

United is a Maryland corporation that provides health care cost containment programs and health care services in the prescription, optical, and dental markets. (Id. P 4.) United has its principal place of business in Maryland, (see id.), but has obtained a certificate of authority to transact business in Connecticut, has designated a Connecticut corporation, Prentice-Hall Corporation System, as its agent for service of process in Connecticut, and has remained an active foreign corporation in good standing in Connecticut since 1985. (See Certification of Deborah F. Salz, Exs. A & B [hereinafter "Salz Certification"].) In 1985, Mednet conducted business with Southern New England Telephone Company ("SNET"), but has not conducted business in Connecticut since then. United does not have offices or employees in Connecticut.

On August 29, 1992, United and Mail-Rx, a Maryland corporation, entered into an Exclusive Supply Agreement ("ESA") whereby United agreed to purchase [*5] all of its customers' requirements for mail order pharmaceutical products from Mail-Rx. (See First Am. Compl. PP 8, 18.) United purchased its requirements through its "customer" Applied Pharmaceutical Services ("APS"), a division of United. (Id. P 20.) The ESA was to be construed and governed by the laws of Maryland. (Id. Ex. A at 3.)

On April 5, 1993, Mednet purchased Mail-Rx and on April 30, 1993, Mail-Rx assigned its rights in the ESA to Mednet. (Id. P 23.) The assignment agreement between Mail-Rx and Mednet was to be construed and governed by the laws of Maryland. (Id. Ex. B at 2.)

On October 1, 1993, United sold its APS division to Value Rx, a Michigan corporation with its principal place of business in Michigan. (Id. PP 3, 11, 27.) Value Rx is a subsidiary of Value Health, a Delaware corporation with its principal place of business in Connecticut. (Id. PP 2, 3.)

On December 22, 1995, Mednet brought suit against United, Value Health, and Value Rx. Only Count II of the First Amended Complaint involves United. It alleges that United breached the ESA by selling APS and thereby eliminating its requirements for Mednet's products and by failing to ensure [*6] that the ESA would be binding on Value-Rx. (Id. PP 56-65.)

DISCUSSION

I. Connecticut's Long-Arm Statute

United argues that Mednet may not invoke Connecticut's long-arm statute for foreign stock corporations, Conn. Gen. Stat. § § 33-411(b) & (c), to exercise personal jurisdiction over it in Connecticut.

A. Section 33-411(b)

United contends that Mednet may not invoke section 33-411(b) because 1) United did not transact business in Connecticut in violation of *Conn. Gen. Stat. § § 33-395* or 33-396 because it has a certificate of authority to transact business in Connecticut, and 2) Mednet's claim that United breached the ESA does not arise out of United's business transactions in Connecticut. The court agrees.

Section 33-411(b) provides that "every foreign corporation which transacts business in this state in violation of § 33-395 or § 33-396 shall be subject to suit in this state upon any cause of action arising out of such business." Conn. Gen. Stat. Ann. § 33-411(b) (West 1987 & Supp. 1996). The definition of a business transaction under section 33-441(b) is limited by its terms to transactions which violate sections 33-395 and 33-396. See id.; *Hagar v.* [*7] *Zaidman, 797 F. Supp. 132, 135-36 (D. Conn. 1992).* United has obtained a certificate of authority to transact business in Connecticut, (see Salz Certification, Exs. A & B), and therefore has not violated section 33-396. n2 Moreover, section 33-395, which concerns corporations that engage in the gas, electric, electric light, water, cemetery, or telephone businesses, is not applicable to United. See *Conn. Gen. Stat. § § 33-395*; 33-286(b). Thus, U nited

has not "transacted business in this state in violation of § 33-395 or § 33-396." See id. § 33-411(b).

n2 Section 33-396 provides in relevant part that "(a) No foreign corporation except an insurance or surety or indemnity company shall transact business in this state until it has procured a certificate of authority so to do from the secretary of state. . . ." Conn. Gen. Stat. § 33-396 (West 1987 & 1996 Supp.).

Moreover, the First Amended Complaint does not allege that Mednet's cause of action against United, which is based on a requirements contract [*8] for pharmaceutical products executed in Maryland between two Maryland corporations, arises out of United's 1985 transaction of business with SNET in Connecticut. See *Wallenta v. Avis Rent A Car Sys., Inc., 10 Conn. App. 201, 205-206, 522 A.2d 820 (1987)* (in order to survive motion to dismiss for lack of personal jurisdiction, § 33-411(b) requires allegations in the complaint that the plaintiff's cause of action arose out the defendant's in-state business transactions).

Accordingly, Mednet may not invoke section 33-411(b) to confer jurisdiction over United in Connecticut.

B. Section 33-411(c)

United maintains that Mednet may not invoke section 33-411(c) because Mednet is not a resident of Connecticut and does not have its usual place of business in Connecticut. The court agrees.

"The Connecticut long-arm statutes do not confer jurisdiction over actions committed by a nonresident party against another non-resident." *Pomazi v. Health Indus. of America, Inc., 869 F. Supp. 102, 104 (D. Conn. 1994)* (citing § 33-411(c)). Indeed, section 33-411(c) expressly provides that a foreign corporation may be subject to suit in Connecticut only "by a resident of this state or by a [*9] person having a usual place of business in this state. . . ." Conn. Gen. Stat. Ann. § 33-411(c) (West 1987 & Supp. 1996). Here, Mednet is a Nevada corporation with its principal place of business in Nevada. (See First Am. Compl. P 1.) Mednet has not offered any evidence that it has its usual place of business in Connecticut.

Accordingly, Mednet may not invoke section 33-411(c) to confer jurisdiction over United in Connecticut. See *Pomazi, 869 F. Supp. at 104* (dismissing claims of non-residents).

II. Consent Jurisdiction under Section 33-411(a)

Mednet argues that United has consented to general personal jurisdiction n3 in Connecticut under section 33-411(a) solely by virtue of its designation of a Connecticut agent for service of process and by registering to conduct business in Connecticut and that such consent obviates the need for a minimum contacts due process inquiry. It cites *Wallenta, 10 Conn. App. at 207* and *Granger v. Marriott Corp., 1993 Conn. Super. LEXIS 2873, No. CV91-0398893S, 1993 WL 454236, *2 (Conn. Super. Ct. Oct. 21, 1993)* to support its position. United contends that section 33-411(a) cannot, in and of itself, confer general *in personam* jurisdiction; rather, the [*10] court must determine whether the assertion of jurisdiction on this basis alone would offend constitutional due process. Because appointing an agent for service of process and registering to do business in Connecticut merely in anticipation of future business does not, without more, constitute continuous and systematic general business contacts in Connecticut, United contends that its compliance with Connecticut's domestication statutes cannot alone confer general *in personam* jurisdiction. The court agrees.

n3 Where a claim does not arise from a non-resident defendant's in-state contacts, the *in personam* jurisdiction asserted is called general jurisdiction. This term contrasts with specific jurisdiction, the situation in which the claim does arise from the defendant's in-state contacts. See *Burger King Corp. v. Rudzewicz, 471 U.S. 462, 473, 85 L. Ed. 2d 528, 105 S. Ct. 2174 (1985)*.

A foreign corporation must obtain a certificate of authority before conducting business in Connecticut. See Conn. [*11] Gen. Stat. § 33-396. It must also designate an agent for service of process. See id. § 33-400(a). It may appoint the Secretary of State, an individual, or a domestic corporation or other authorized corporation, to act as its agent. See id. § 33-400(b). Section 33-411(a), in turn, provides that "any process . . . in connection with any action" may be served on a foreign corporation authorized to transact business in Connecticut by serving process on its agent designated under section 33-400. Conn. Gen. Stat. Ann. § 33-411(a) (West 1987 & Supp. 1996).

The Connecticut Appellate Court has stated that "[a] corporation which complies with the requisites of [section] 33-411(a) has, in fact, consented to the exercise of jurisdiction by the courts of this state." *Wallenta, 10 Conn. App. at 207.* See also *Granger, 1993 Conn. Super. LEXIS 2873,* at *3, *1993 WL 454236* (same - citing Wallenta). "'By authorizing an agent or public official to accept service of process in actions brought against it,

Case 3:03-cv-00597-MRK   Document 122-2   Filed 01/18/2005   Page 4 of 5

Page 4
1996 U.S. Dist. LEXIS 22338, *

the corporation consents to the exercise of . . . jurisdiction . . . as to all causes of action to which the authority of the agent or official extends.'" *Wallenta, 10 Conn. App. at 207-208* [*12] (quoting 1 *Restatement (Second), Conflicts of Laws § 44*. cmt. a).

However, even though Wallenta and Granger seemingly state that fulfilling the requirements of sections 33-396 and 33-400 can alone confer general personal jurisdiction over a foreign corporation under section 33-411(a), the court concludes for the following reasons that, despite United's compliance with these domestication statutes, the ultimate determination of jurisdiction rests on a due process inquiry, which, in this case, warrants dismissal.

First, despite its finding of consent under 33-411(a), the Wallenta court nevertheless remanded for a determination of whether the assertion of jurisdiction over the defendants under 33-411(a) would offend due process. See *Wallenta, 10 Conn. App. at 208-209*. Because consent alone can confer *in personam* jurisdiction, see *Insurance Corp. of Ireland, Ltd. v. Compagnie des Bauxites de Guinee, 456 U.S. 694, 703-705, 72 L. Ed. 2d 492, 102 S. Ct. 2099 (1982)* (a party may expressly or impliedly consent to jurisdiction in a state), the only reasonable explanation for this course of action is that the Wallenta court incorrectly labeled section 33-411(a) [*13] as a consent to jurisdiction statute, when it in fact meant (and concluded) that it is merely a consent to service of process statute which is always subject to federal due process oversight. A statutory interpretation of Connecticut's long-arm statute supports this conclusion. Indeed, while the language of sections 33-411(b) and 33-411(c) provides that foreign corporations which undertake certain activities having an in-state nexus "shall be subject to *suit*" in Connecticut, section 33-411(a) in contrast indicates that "any process, notice or demand . . . *may*, when timely made, *be served*" upon the designated agent of foreign corporation. In addition to this distinction, if section 33-411(a) were a consent to suit or jurisdiction statute as Mednet suggests, section 33-411(c) would be rendered superfluous - a result contrary to the most basic rules of statutory construction. See *Bridgeport Hosp. v. CHRO, 232 Conn. 91, 100-101, 653 A.2d 782 (1995)* ("It is a basic tenet of statutory construction that the legislature 'did not intend to enact meaningless provisions.'") (quoting *Turner v. Turner, 219 Conn. 703, 713, 595 A.2d 297 (1991)); Hopkins v. Pac, 180 Conn. 474,* [*14] *476, 429 A.2d 952 (1 980)* (it is a "well established principal that statutes must be construed, if possible, "such that no clause, sentence, or word shall be superfluous, void, or insignificant."). Thus, based on Wallenta and a reasonable construction of Connecticut's long-arm statute, the court concludes that section 33-411(a) is a consent to service statute only and that the assertion of jurisdiction over a foreign corporation which complies with Connecticut's domestication statutes must ultimately comport with due process.

Second, while the Second Circuit has not reached this precise issue and, although there is authority to the effect that mere compliance with domestication statutes alone confers general *in personam* jurisdiction over foreign corporations, see e.g., *Knowlton v. Allied Van Lines, Inc., 900 F.2d 1196, 1200 (8th Cir. 1990); Koch Supplies, Inc. v. Needham Indus., 1990 U.S. Dist. LEXIS 15707, *10, No. 86-1330- CV-W-9-6, 1990 WL 274485* (W.D. Mo. Nov. 14, 1990); *Wheeling Corrug. Co. v. Universal Constr. Co., 571 F. Supp. 487, 488 (N.D. Ga 1983),* there is also considerable, well-reasoned authority that the assertion of general jurisdiction on this basis alone offends [*15] due process. See, e.g., *Siemer v. Learjet Acquis. Corp., 966 F.2d 179, 180-84 (5th Cir. 1992),* cert. denied, *506 U.S. 1080, 122 L. Ed. 2d 356, 113 S. Ct. 1047 (1993); Ratliff v. Cooper Lab., Inc., 444 F.2d 745, 748 ( 4th Cir.),* cert. denied, *404 U.S. 948, 30 L. Ed. 2d 265, 92 S. Ct. 271 (1971); Leonard v. USA Petrol. Corp., 829 F. Supp. 882, 886-891 (S.D. Texas 1993); Sandstrom v. Chemlawn Corp., 727 F. Supp. 676, 679-683 (D. Me 1989),* aff'd, *904 F.2d 83 (1st Cir. 1990); Jones v. Family Inns of America, Inc., 1989 U.S. Dist. LEXIS 5868, Civ. A. No. 89-0190, 1989 WL 57130,* *1 (E.D. La. May 23, 1989); In re Mid-Atlantic Toyota Antitrust Litigation, 525 F. Supp. 1265, 1277-1278 (D. Md. 1981),* modified on other grounds, *541 F. Supp. 62 (D. Md. 1981).*

The court finds the latter decisions persuasive and determinative of this issue. To exercise jurisdiction over a foreign corporation in a suit not arising out of or related to its contacts with the forum state, *i.e.*, general jurisdiction, a foreign corporation's contacts with the forum must be "continuous and systematic general business contacts." *Helicopteros Nacionales de Colombia, S.A. v. Hall, 466 U.S. 408, 414-16,* [*16] *80 L. Ed. 2d 404, 104 S. Ct. 1868 (1984)* (citing *Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 438, 96 L. Ed. 485, 72 S. Ct. 413 (1952)).* The record reveals that, but for isolated transactions with SNET in 1985, United has no other contacts with Connecticut apart from its compliance with sections 33-396 and 33-400. It has no offices or employees in Connecticut, nor is there any evidence of bank accounts in Connecticut or advertising directed at the state. Clearly, United cannot be held responsible for the forum contacts of other parties such as Value RX or Value Health. See *Pomazi, 869 F. Supp. at 104* ("due process prohibits a state from exercising personal jurisdiction over one for the actions of another."). Thus, United's continued compliance with Connecticut's domestication statutes is its sole forum

contact and is entirely unrelated to Mednet's cause of action based on the ESA contract. This contact, made in mere anticipation of future business transactions in Connecticut, is "of no special weight," *Ratliff, 444 F.2d at 748* ("Applying for the privilege of doing business is one thing, but the actual exercise of that privilege is quite another."), and, in and of [*17] itself, is insufficient to confer general *in personam* jurisdiction. *Sandstrom, 727 F. Supp. at 682* ("mere registration to do business in Maine . . . [is] not, without more, continuous and substantial contacts with the state of Maine.") (citing Helico pteros and Perkins). See also *In re Mid-Atlantic, 525 F. Supp. at 1278* (when corporation had no contacts with forum state since an isolated sale in 1979, its compliance with state's domestication statutes alone was insufficient basis for assertion of personal jurisdiction).

Finally, the court concludes that the assertion of general jurisdiction against United under these circumstances not only fails the Helicopteros test, but would also be unjust and contrary to the expressed public policy of Connecticut. Due process requirements are satisfied only when the assertion of jurisdiction does not offend "'traditional notions of fair play and substantial justice.'" *International Shoe, 326 U.S. at 316* (quoting *Milliken v. Meyer, 311 U.S. 457, 463, 85 L. Ed. 278, 61 S. Ct. 339 (1940))*. Accordingly, a court should exercise *in personam* jurisdiction over a foreign corporation only where the defendant could "reasonably [*18] anticipate being haled into [the forum] court." *World-Wide Volkswagen, 444 U.S. at 297*. As the Sandstrom court succinctly stated:

> It is reasonable for a corporation to assume, in light of [the above] Supreme Court precedent, that it must do some business within a state to subject itself to suit within the state. Defendants did no business in the state of Maine and could not reasonably anticipate being haled into Maine to defend a suit completely unrelated to its licensure in Maine. It would simply be unjust to exercise *in personam* jurisdiction over Defendants where their only contact with the state was to register to do business in the future.

*Sandstrom, 727 F. Supp. at 683*. Like the defendants in Sandstrom, United could not reasonably anticipate being haled into court in Connecticut based on its precautionary compliance with Connecticut's registration statutes alone. See *Leonard, 829 F. Supp. at 891* ("Routine paperwork to avoid problems with a state's procedures is not a wholesale submission to its power."). To hold otherwise would, in effect, punish large corporations like United who, in good faith, comply with domestication statutes on [*19] the premise that they might conduct business within the forum state in the future. It would also encourage such corporations to ignore state domestication requirements like sections 33-396 and 33-400 when actually transacting business within a state, a result that the Connecticut legislature did not intend when enacting its long-arm statute. See, e.g., *Armor Bronze & Silver Co. v. Chittick, 221 F. Supp. 505, 511 (D. Conn. 1963)* ("The purpose of [section] 33-396, is to afford domestic corporations assistance in bearing their share of the cost of the state's services rather than to require them to bear it alone and, as a practical consequence, suffer the serious competitive disadvantage which would result from permitting foreign corporations to carry on intrastate business unburdened by taxes and other duties.").

Accordingly, the court concludes that Mednet may not assert general *in personam* jurisdiction against United under section 33-411(a).

CONCLUSION

For the foregoing reasons, United's motion [doc. # 11] is GRANTED. This action is hereby DISMISSED with respect to United Healthcare, Inc. n4

> n4 While Mednet, in its opposition papers, and United, in its reply, have urged the court to transfer this action to the United States District Court for the District of Maryland as an alternative to dismissal, neither has filed a formal motion as required by the Federal Rules of Civil Procedure. See *Rule 7(b), Fed. R. Civ. P.* ("An application to the court for an order shall be by motion. . . ."). Accordingly, the issue is not properly before the court and the court therefore declines to decide it in the context of United's motion to dismiss.

[*20]

SO ORDERED this 14th day of August, 1996 at Bridgeport, Connecticut.

Alan H. Nevas

United States District Judge