## UNITED STATES DISTRICT COURT
### DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| BILL L. GOUVEIA AS ADMINISTRATOR | : | CIVIL ACTION NO. |
| OF THE ESTATE OF JOSE GUERRA | : | 303 CV 597 MRK |
| | | |
| V. | : | |
| | | |
| SIG SIMONAZZI NORTH AMERICA, INC. | : | |
| AS SUCCESSOR IN INTEREST BY MERGER | : | |
| TO SASIB NORTH AMERICA, INC., AS | : | |
| SUCCESSOR IN INTEREST BY MERGER TO | : | |
| SASIB BAKERY NORTH AMERICA, INC. | | |
| | : | |
| | | |
| SIG SIMONAZZI NORTH AMERICA, INC. | : | |
|       THIRD-PARTY PLAINTIFF: | | |
| V. | : | |
| | | |
| SASIB FOOD MACHINERY MV, S.P.A., | : | |
| SASIB BAKERY ITALIA, S.P.A., | : | |
| DRY PRODUCTS, S.P.A., AND | : | |
| COMPAGNIE INDUSTRIALI RIUNITE, S.P.A. | : | |
|     THIRD-PARTY DEFENDANTS | : | FEBRUARY 11, 2005 |

## THIRD PARTY PLAINTIFF'S MEMORANDUM OF LAW IN REPLY TO THIRD PARTY DEFENDANTS' MEMORANDUM IN OPPOSITION TO THIRD PARTY PLAINTIFF'S  MOTION TO AMEND THIRD PARTY COMPLAINT

The defendant/third-party plaintiff, Sig Simonazzi North America, Inc., ("Third-Party Plaintiff"), submits this Memorandum of Law in Reply to the Third Party Defendants'[1] Memorandum In Opposition to Third Party Plaintiff's Motion to Amend Third Party Complaint.

## I.    INTRODUCTION

In brief, the Third Party Defendants offer no substantive or factual basis to challenge the amendment proposed by the Third Party Plaintiff (the "Amended Third-Party Complaint").

---

[1]  Sasib Bakery Italia, S.p.A., Sasib Food Machinery Medium Volume, S.p.A., Compagnie Industriali Riunite S.p.A., and Dry Products, S.p.A. will be collectively referred to in this Reply as the Third-Party Defendants.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

They do not rebut the fact that it was only through recent testimony that the Third-Party Plaintiff learned of facts regarding the corporate domination by CIR, S.p.A. ("CIR") and Dry Products, S.p.A. ("Dry Products") over the other Third Party Defendants. They also do not challenge that Food Machinery MV, S.p.A. ("Food Machinery) is a successor to Sasib Bakery Italia ("Sasib Bakery") and Sasib Food Machinery MV, S.p.A. ("Sasib Food"). Instead, the claims of "futility" contained in their opposition are a vehicle to tacitly submit a Motion, under Rule 12(b)(2) of the Federal Rules of Civil Procedure ("F.R.C.P."), that they are not subject to personal jurisdiction, or, more likely, to delay the timely advancement and adjudication of these proceedings. *See* Note 2, *infra*.

Leaving aside that such arguments should have been raised prior to the initial answer, the Third-Party Defendants' claims that the pleadings do not afford this Court jurisdiction over them are without merit. Very simply, the allegations in the proposed Third-Party Complaint (and for that matter, facts adduced in discovery) establish that the Third-Party Defendants are subject to this Court's jurisdiction. Not only is this because of the repeated and long-term presence of their representatives in this State, which constitutes transacting business in Connecticut, but also because a fair reading of the Connecticut Long Arm Statute, C.G.S. § 33-929(f), warrants a conclusion that in the context of this third-party complaint, it should be applied to allow this third-party claim. Further, the Third-Party Defendant's reliance on C.G.S. § 52-102a is misguided. The Third-Party Plaintiff has a right under F.R.C.P. Rule 18 to allege direct claims against the Third-Party Defendants in light of its proper claims for contribution and indemnification. Given these allegations, facts, and law, Third-Party Defendants' efforts to resist their responsibility in this case are of questionable faith, and the Motion for Leave to Amend should be granted.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## II.     ARGUMENT

### A.     THE PROPOSED AMENDMENTS ARE NOT FUTILE BECAUSE THEY INCLUDE SUFFICIENT FACTS TO WITHSTAND A MOTION TO DISMISS UNDER F.R.C.P. RULE 12(b)(6)[2]

Third Party Defendants urge denial of Third-Party Plaintiff's proposed amendment on futility grounds.  *See* Opp. Memo. at pp. 3 – 10.  Notwithstanding their prolonged and purposeful involvement in the design, sale, installation and modifications of the *specific* bakery line sold to Chaves Bakery -- which included the presence of their representatives in Connecticut for extended periods of time during the installation, commissioning and modification of the machine --Third Party Defendants argue that the proposed amendments are futile (and must be denied) because the use of Connecticut's long-arm statute, C.G.S. § 33-299(f), is limited to residents or persons who have their usual place of business in Connecticut.  *See id.*, at p. 3.  In doing so, Third-Party Defendants ignore the pleaded (and already established) facts, and the clear *in personam* allegations contained in the Amended Third-Party Complaint.  Third-Party Defendants' argument is, thus, itself futile, as the Amended Third-Party Complaint easily survives a challenge under F.R.C.P. Rule 12(b)(6).

---

[2]   The motive behind the Third-Party Defendants' futility argument (and the Opposition Memorandum, for that matter) is clearly suspect given that the Third-Party Defendants have previously answered the operative Third-Party Complaint, which contained nearly identical jurisdictional allegations as the Amended Third-Party Complaint.  Indeed, most cases discussing futility in the context of a proposed amendment deal with a plaintiff, who after confronting a motion to dismiss or court order dismissing a complaint, files an amended complaint.  Neither is the case here.  Instead, the Third-Party Plaintiff is merely seeking to amend the Third-Party Complaint to further enunciate the bases of its claims for indemnification and contribution and to add a claim under the Uniform Fraudulent Conveyance Act as a result of facts learned through discovery.  If the Third-Party Defendants truly believe the jurisdictional allegations are insufficient (which they are not), it has procedures after leave is granted by the Court and the Amended Third-Party Complaint is served, to the extent that they have not previously waived those procedures.  Accordingly, the Third-Party Defendants' Opposition Memorandum must simply be viewed (and treated) as a dilatory maneuver intended slow the timely advancement and adjudication of these proceedings.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

### 1.    LEGAL STANDARD TO ESTABLISH FUTILITY

Under F.R.C.P. Rule 15, a pleading may be amended after a responsive pleading has been served only by leave of the Court or written consent of the adverse party.  F.R.C.P. Rule 15.  The rule expressly states that such leave shall be freely given when justice so requires.  *See id.*  "The Supreme Court has emphasized that amendment should normally be permitted, and has stated that refusal to grant leave without justification is 'inconsistent with the spirit of the Federal Rules.'"  *Rachman Bag Co. v. Liberty Mut. Ins. Co.*, 46 F.3d 230, 234 (2d Cir. 1995).  "If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claims on the merits."  *U.S. ex rel. Maritime Admin. v. Cont'l Ill. Nat'l Bank and Trust Co. of Chicago*, 889 F.2d 1248, 1254 (2d Cir. 1989) (*citing Foman v. Davis*, 371 U.S. 178, 182 (1962)).

In order to be considered futile, proposed amendments must fail to withstand a motion to dismiss for failure to state a claim under Rule 12(b)(6).[3]  *See Dougherty v. Town of North Hempstead Bd. of Zoning Appeals*, 282 F.3d 83, 88 (2d Cir. 2002).  The adequacy of the proposed amendment(s) are  judged by the same standards as those governing the adequacy of a filed pleading.  *See Ricciuti v. N.Y.C. Transit Auth.*, 941 F.2d 119, 123 (2d Cir. 1991).  Rule 8(a)(1) requires, "a short and plain statement of the grounds upon which the court's jurisdiction depends…"  F.R.C.P. Rule 8(a)(1).

Futility is a proper basis for denying leave to amend a complaint only where it is "beyond doubt that the plaintiff can prove no set of facts in support of his amended claims" which would entitle him to relief.  *Pangburn v. Culberston*, 200 F.3d 65, 70-71 (2d Cir. 1999); *see also*

---

[3]  Indicative of the strength of the Third-Party Defendants' futility argument is that rather than move to dismiss prior to filing their Answer on May 17, 2004, they waited until now to challenge jurisdiction, notwithstanding that the original Third-Party Complaint and the Amended Third-Party Complaint contain similar jurisdictional allegations.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN**
**& SAGE** LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Ricciuti*, 941 F.2d 199 at 123.  Consistent with the appropriate standards for a motion under Rule

12(b)(6), all factual allegations must be accepted as true and all inferences must be drawn in the

light most favorable to the plaintiff.  *See Senich v. American-Republican, Inc.*, 215 F.R.D. 40,

41-42 (D. Conn. 2003).  Here, the jurisdictional allegations in Third-Party Plaintiff's proposed

Amended Complaint meet the pleading requirements of F.R.C.P. Rule 8(a)(1) and provide the

Third-Party Defendants with a fair understanding of the basis of the Court's *in personam*

jurisdiction.  As such, Third-Party Plaintiff's proposed amendments are not futile and Third-

Party Plaintiff's Motion should be granted.

> **2.    THIRD-PARTY PLAINTIFF HAS ALLEGED SUFFICIENT FACTS TO SUBJECT THE THIRD-PARTY DEFENDANTS TO PERSONAL JURISIDCTION UNDER CONNECTICUT'S LONG-ARM STATUTE**

Although the Amended Complaint references C.G.S. § 33-929(f) in support of the Third-

Party Plaintiff's allegation that the court has *in personam* jurisdiction over the Third-Party

Defendants (*see* Amended Complaint, ¶ 8), the jurisdictional allegations in the Amended

Complaint (and original Third-Party Complaint for that matter) subject the Third-Party

Defendants to personal jurisdiction under C.G.S. §  33-929(e), as well.[4]

C.G.S. § 33-929(e) provides that "[e]very foreign corporation which transacts business in

this state in violation of Section 33-920, shall be subject to suit in this state upon any cause of

action arising out of such business."  "The subsection thus confers local jurisdiction over a

foreign corporation on two conditions: the transaction of business in this state, and a cause of

action arising out of the transaction of such business."  *See Lombard Bros. Inc. v. Gen. Asset*

---

[4]   In the event the Court deems it necessary, the Third-Party Plaintiff will include in the Amended Third-Party Complaint reference to C.G.S. § 33-929(e).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*Mgmt. Co.*, 190 Conn. 245, 251 (1983); *see also Wilkinson v. Boats Unlimited*, *Inc.*, 236 Conn. 78, 86 (1996).

"The term 'transacting business' has been interpreted to embrace a single purposeful business transaction." *See Hill v. W.R. Grace & Co.*, 42 Conn. Supp. 25, 29 (Conn. Super. Ct. 1991)(*citing Rosenblit v. Danaher*, 206 Conn. 125, 138 (1988), *Zartolas v. Nisenfeld*, 184 Conn. 471, 474 (1981)). Courts have consistently held that the statutory language mandating "any cause of action arising out of the transaction of such business requires some showing that the present litigation bears some connection with the business conducted by the foreign corporation in this state." *See Lombard Bros.*, 190 Conn. at 251.

As discussed, *infra,* and as is clearly contained in the Amended Third-Party Complaint, Third-Party Plaintiff has alleged both that the Third-Party Defendants have transacted business in Connecticut and that the tortuous conduct, if any, was a result of this business. In the Amended Third-Party Complaint, the Third-Party Plaintiff has alleged that Sasib Bakery, Sasib Food, and Food Machinery were Italian Corporations engaged in the business of designing, manufacturing, assembling, marketing, selling, distributing, installing, and modifying the Bakery Line Bread and Roll Making Machine, model/order number 3444 CHA (the "Bakery Machine"), which plaintiff claims caused the injuries involved in this case. *See* proposed Amended Third-Party Complaint, ¶¶ 2-4. Third-Party Plaintiff also alleges in both the original and Amended Third-Party Complaint that Dry Products and CIR are Italian Corporations and are successors in interest by reorganization, merger, continuation and/or continuation of product line of Sasib Food, Sasib Bakery, and or Food Machinery. *See id.*, ¶ 5. In the Amended Complaint, Third-Party Plaintiff further alleges that Food Machinery, Sasib Food, and Sasib Bakery are or have been the instrumentality of and/or controlled and dominated by Dry Products or CIR, or both, and are the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Halloran
& Sage LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

alter egos of Dry Products or CIR, or both. *See id.* ¶¶ 5-6. As such, the Third-Party Plaintiff has alleged that Dry Products and CIR have directly or indirectly engaged in the business of designing, manufacturing, assembling, marketing, selling, distributing, installing, and modifying the Bakery Machine or, alternatively or in addition, assumed or are otherwise responsible for the liabilities of Sasib Food, Sasib Bakery, or Food Machinery, or all three. *See id.*

When accepting all factual allegations as true and drawing all reasonable inferences in the light most favorable to the Third-Party Plaintiff (*see Senich,* 215 F.R.D. at 41-42), it is plain that the Court can exercise personal jurisdiction over the Third-Party Defendants under C.G.S. § 33-929(e), in addition to C.G.S. § 33-929(f).[5] Third-Party Plaintiff alleges in Paragraph 8 of the Amended Complaint (the personal jurisdiction paragraph) that the Amended Third-Party Complaint arises out of a contract which was intended to be (and was) performed by the Third-Party Defendants in Connecticut. *See id.*, ¶ 8. Likewise, the jurisdictional paragraph alleges that the Third-Party Defendants had a reasonable expectation that the Bakery Machine would be used in Connecticut at the time they designed, manufactured, distributed, installed, assembled, and modified the Bakery Machine. *Id.*

More important, Third-Party Plaintiff alleges (and will ultimately prove) that the Third-Party Defendants, either directly or indirectly through subsidiaries they control and/or which are their alter-egos, shipped the Bakery Machine and the components into Connecticut and installed, assembled, and modified such Bakery Machine *in Connecticut. See id.*

Indeed, while Third-Party Plaintiff is not required to plead *in personam* jurisdiction in any greater detail then already contained in the Third-Party Complaint and Amended Third-Party Complaint (*see* F.R.C.P. Rule 8(a)(1)), even a cursory review of deposition testimony and

---

[5] The applicability of C.G.S. § 33-929(f) is discussed in Section II, B, *infra.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

documentary evidence in this case establishes that the Third-Party Defendants were transacting business in Connecticut, while installing, commissioning, and modifying the Bakery Machine at Chaves Bakery II, Inc, in Bridgeport, Connecticut ("Chaves Bakery") during 1998 and 1999.[6]  In sum, it cannot be denied that selling and designing a bakery line for a specific location in Bridgeport, Connecticut, and then having its technicians spend months, installing, commissioning and modifying the Bakery Machine at Chaves Bakery, constitutes transacting business in Connecticut.

As is also clear from the Amended Third-Party Complaint (and the operative Complaint filed by the plaintiff), Third-Party Plaintiff asserts the alleged tortuous conduct giving rise to the injuries of the plaintiff's decedent, if at all, arise from the Third-Party Defendants' conduct, including the design, installation and the modification of the Bakery Machine by the Third-Party Defendants in Bridgeport, Connecticut.  *See id.*  It is further evident from the allegations in the two complaints that such conduct by the Third-Party Defendants arises directly out of the plaintiff's allegations in the operative Complaint.  *See* ¶¶ 2-8.

---

[6] While not a complete listing of their presence at Chaves Bakery (which will be the subject of further testimony and document translation), some of the contacts are reflected in documents and testimony attached to the accompanying Declaration of Joseph G. Fortner, Jr. ("Fortner Decl."), dated February 11, 2005.  A copy of the Fortner Decl. is attached hereto as Exhibit 1.  These include that Sasib Food's "baker specialist (Luca Colato)" came to Chaves Bakery in November 1998 for an "Adamatic test") (Fortner Decl., Exh. A); that "two additional Italian mechanical technicians" were scheduled to arrive on November 19, 1998 to stay on site until December 19, 1998 (*id.,* Exh. B); status reports provided by Italian technician Franco Capodaglio in January, February and March 1999 (*id.,* Exh. C)**;** the concession that Sasib Food's technician installed conveyors at Chaves Bakery in July of 1999 (*id.,* Exh. D); testimony that Sasib Food's engineer Marco Pimazzoni was present for an inspection at Chaves Bakery for several days in August of 1999 (*id.,* Exh.E); and testimony that representatives of Sasib Food performed work on the equipment at the end of July of 1999.  *Id.,* Exh.F.

Similarly, John Chaves, Sr. (President of Chaves Bakery) testified that Italian technicians were present at the Bridgeport facility installing and or modifying the Bakery Machine for "months."  *See id.*, Exh. G.  Richard Soltis, a former employee of Chaves Bakery, testified that employees of the Third-Party Defendants were present at Chaves Bakery two or three times servicing the Bakery Machine or installing an additional component part while he was employed at Chaves Bakery.  *See id.,* Exh. H.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

Accordingly, Third-Party Plaintiff has sufficiently pled *in personam* jurisdiction over the Third-Party Defendants under C.G.S. § 33-929(e) and fulfilled the pleading requirements of F.R.C.P. Rule 8(a)(1).  As such, the Third-Party Defendants futility argument must fail *See Pangburn*, 200 F.3d at 70-1 (futility a proper basis for denying leave to amend complaint only where it is shown beyond any doubt that plaintiff cannot prove facts in support of amended claims entitling him to relief).

### B.    APPLICATION OF THIRD-PARTY DEFENDANTS' INTERPRETATION OF C.G.S. § 33-929(f) TO THIRD PARTY ACTIONS WOULD LEAD TO UNJUST, UNREASONABLE AND IRRATIONAL RESULTS

In an effort to evade responsibility, Third-Party Defendants urge this court to adopt an unprecedented, strict interpretation of the language of C.G.S. § 33-929(f) as an absolute bar on the ability of non-residents to implead foreign corporations into a pending action pursuant to F.R.C.P. Rule 14(a).  Not only do Third-Party Defendants offer no controlling authority for an interpretation which would be illogical under the circumstances, but under established principles of statutory construction, the legislature cannot reasonably have intended to allow the detrimental results that such an interpretation would entail in the total absence of corresponding benefits.  Accordingly, Third-Party Defendants' argument that § 33-929(f) should operate as an absolute bar on the ability of a non-resident defendant to allocate responsibility for a resident plaintiff's claims to another non-resident corporation should be rejected.  Instead, the Court should consider the nature of the action and its claims, the totality of the Third-Party Defendants' connections with Connecticut, the underlying claims by the plaintiff, and whether the Third-Party Defendants would be amenable to suit by the resident plaintiff, in determining whether personal jurisdiction exists over the third-party claim.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

1.     **STATUTORY INTERPRETATION AND C.G.S. § 33-929(f)**

The application of a statute to a particular set of facts is a matter of statutory interpretation. *Russo Roofing, Inc. v. Rottman*, 86 Conn. App. 767, 775 (2005). "The fundamental objective [of statutory construction] is to ascertain and give effect to the intent of the legislature." *Falkenstein v. Falkenstein*, 84 Conn. App. 495, 501 (2004) (brackets in original; internal quotations omitted). "[I]n seeking to ascertain the intent of the legislature … we are guided by the golden rule of statutory interpretation … that the legislature is presumed to have intended a reasonable, just and constitutional result." *Giaimo v. City of New Haven*, 257 Conn. 481, 494 (2001). Finally, "[i]n construing a statute, common sense must be used and courts must assume that a reasonable and rational result was intended." *Rocco v. Garrison*, 268 Conn. 541, 550 (2004).

The relevant portion of § 33-929(f) reads, "[e]very foreign corporation shall be subject to suit in this state, *by a resident of this state or by a person having a usual place of business in this state* …" (emphasis added). Notwithstanding the context of this proceeding – a third-party complaint filed in an existing case in this District -- the Third-Party Defendants claim that the latter clause is an absolute bar on the availability of the long-arm statute to defendants who are not residents or persons having usual places of business in the state being able to implead nonresidents as third-party defendants in the action. While such a residency restriction may be applicable to the claims of a first-party plaintiff who asserts original jurisdiction under § 33-929(f), (*see Wilkinson*, 236 Conn. at 87), neither the express language of § 33-929(f) nor logic applies any residency limitation to third-party actions in existing cases. *See* C.G.S. 33-929(f).

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

As the Third-Party Defendants concede in their brief (Mem. Opp., p. 6), no Connecticut[7] appellate court has considered the issue of whether § 33-929(f) is unavailable to nonresident *third-party* plaintiffs, and movant's research has revealed no reported cases where a non-resident defendant haled into Connecticut's courts has been denied the use of § 33-929(f) to assert jurisdiction over a non-resident third-party defendant.

On the contrary, the court in *Connecticut General Life Ins. Co. v. SVA, Inc.*, 743 F.Supp. 107 (D. Conn. 1990), rightly decided that the long-arm statute is "directed toward assertions of original jurisdiction – not extensions of the existing jurisdiction to third-parties." *Id.* at 109 (quoting *Dalheim v. Sequemat, Inc.*, Civil No. N-85-134 (PCD) (D. Conn. 1986)). Thus, the fact that the defendant in *Connecticut General*, as a Massachusetts corporation, would not have been able to invoke § 33-929(f) as a plaintiff in a first-party action did not prevent the defendant (as a third-party plaintiff) from impleading a nonresident third-party defendant under state impleader rules. *Connecticut General*, 743 F.Supp. at 109. This holding has been followed by subsequent state Superior Court decisions.[8]

---

[7] Third-Party Defendants' sole citation in support of its claim that non-resident defendants sued in Connecticut should be denied access to third-party procedures is a case from the Northern District of Mississippi, interpreting that state's long-arm statute. *F.L. Crane Co. v. Cessna Aircraft Co.*, 73 F.R.D. 384 (N.D. Miss. 1976). Not only does that decision have no controlling effect upon this action -- pending in the District of Connecticut and involving the Connecticut long-arm statute -- but it is submitted that the court in *Crane* ignored the sound policy reasons for allowing third-party actions against nonresidents, as set forth herein. Moreover the facts in *Crane* are easily distinguished from those presented here. There, the third-party plaintiff Cessna claimed that the proposed third-party defendant made modifications to an aircraft long after it left Cessna's control, and that those modification – which occurred outside the forum where the case was pending) caused the accident. *See Crane*, 73 F.R.D. at 385. In sharp contrast, it is alleged in the Amended Third-Party Complaint that the Third-Party Defendants not only performed the relevant installation and modifications in Connecticut (*see* Amended Complaint ¶¶ 2-6, 8), but the conduct at issue in the case at bar is simply that which is the subject of the original complaint (*see id,* ¶¶ 10-18 (*citing* the plaintiff's Complaint)). Thus, unlike the situation in *Crane,* all of the conduct at issue is within the forum and/or within the four corners of the original pleadings.

[8] *See Nationwide Mut. Ins. v. Davidson*, No. 545891, 1999 WL 639909 (Aug. 3, 1999) (Mihalakos, J.) (attached as Exh. 2); *Winkelman v. Dohm*, No. 096682, 1992 WL 91805 (April 27, 1992) (Barnett, J.) (attached as Exh. 3).

HALLORAN
& SAGE LLP

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

While the Third-Party Defendants dispute the reasoning employed in *Connecticut General* and its progeny and urge this Court to adopt a narrow reading of the statutory language in § 33-929(f) to bar non-residents from *ever* impleading a nonresident corporation as a third-party defendant in a pending action, this illogical[9] argument fails to acknowledge the fundamental differences between first- and third-party proceedings and, therefore, must be rejected.  Irrespective of Third-Party Defendants' attacks upon the court's reasoning in *Connecticut General*,[10] the court there clearly reached the just, efficient, rational and equitable result (allowing a foreign corporation the right to implead a third-party defendant) when presented with a very similar situation.  Movant not only endorses the result in *Connecticut General* and its progeny, but submits that this result can also be reached as a matter of logic and law, as discussed in Section II, C, 4, *infra*.

> **2.    NO VALID PURPOSE EXISTS FOR EXTENDING THE RESIDENCY LIMITATION TO ENCOMPASS THIRD-PARTY ACTIONS.**

Movant submits that a fair interpretation of the applicable statute, in the context of third-party actions, mandates a conclusion that the long-arm statute should be available to nonresident third-party plaintiffs.  While the residency limitation in C.G.S. § 33-929(f) may have some

---

[9] Under Third-Party Defendants' "logic," if Alitalia were sued in Connecticut by Connecticut residents claiming that an Italian terrorist who flew to JFK Airport brought with him toxic materials used to poison Connecticut residents, Alitalia would not be allowed to implead the nefarious Italian passenger whose conduct caused the injuries.  Such an outcome would be nonsensical, and would fall wholly outside the intent of both the Federal Rules of Civil Procedure (which are to be "construed and administered to secure the just, speedy and inexpensive determination of every action," F.R.C.P. Rule 1); and even  Connecticut impleader procedures.  *See Beaudoin v. Town Oil Co, Inc.*, 207 Conn. 575, 588 (1988).

[10] In that regard, Third Party Defendants exert an inordinate amount of their Memorandum attacking the reasoning utilized by the court in deciding the *Connecticut General* case, without questioning the logic and justice of the court's conclusions.  *See* Mem. Opp., pp. 6-8.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**Halloran**
**& Sage LLP**

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

legitimate purposes in the context of a first party action,[11] in the context of third-party actions these justifications for the limitation on access to the courts (and the long arm statute) disappear.

A nonresident third-party plaintiff (such as movant here) has already been haled into Connecticut's courts; denying it the right to avail itself of the long-arm statute to implead a party properly responsible for "all or part of a plaintiff's claim" (*see* F.R.C.P. Rule 14(a)), certainly does not confer a benefit upon Connecticut residents or businesses, or preserve resources.  In fact, a more complete and efficient resolution of all underlying claims will be realized by allowing the non-resident defendant to implead all parties potentially responsible for plaintiff's damages.  Likewise, judicial resources are needlessly expended by precluding a defendant from proceeding with a third-party action under C.G.S. § 33-929(f); a result squarely in conflict with broad public policy concerns underlying long-arm jurisdiction, third-party practice, and the Federal Rules of Civil Procedure. *See* Section II, B, 3, *infra*.  Finally, any concerns about forum shopping are non-existent where, as here, the defendant already been brought into the forum, and merely seeks to bring in parties who are liable for the plaintiff's underlying claim, as is permitted under F.R.C.P. Rule 14(a).  Accordingly, an extension of the residency limitation to encompass third-party claims serves none of the valid purposes associated with limitations applicable to first-party actions.

**3.     EXTENSION OF THE RESIDENCY LIMITATION TO THIRD-PARTY ACTIONS WOULD CAUSE SUBSTANTIAL HARM**

The irrationality of the Third-Party Defendants' argument that the residency limitation in C.G.S. § 33-929(f) should extend to third-party actions is further demonstrated when one considers public policy considerations, including the unjust burden that such a rule would place

---

[11] For instance, it may serve to preserve the state's judicial resources by confining this benefit to a discrete group of persons (residents or persons with a usual place of business in Connecticut) and by preventing forum shopping by nonresident plaintiffs who may seek to use Connecticut courts, for whatever reason.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

on non-resident defendants sued in Connecticut, and even upon the plaintiff who commenced that action.

First, the Third-Party Defendants' interpretation of Connecticut's long-arm statute would effectively undermine the purposes of federal impleader procedures. By denying a non-resident defendant the right to allocate responsibility for the plaintiff's underlying claims, strong interests in favor of preserving judicial economy and ensuring consistency of results would be frustrated. Third-party practice under Rule 14 of the Federal Rules of Civil Procedure has been recognized as an essential tool in preserving judicial resources. As stated by the Second Circuit, a "general purpose of [Rule 14] was to avoid two actions which should be tried together to save the time and cost of a reduplication of evidence ..." *Dery v. Wyer*, 265 F.2d 804, 806 (2d Cir. 1959); *see also Tourangeau v. Uniroyal, Inc.*, 189 F.R.D. 42, 48 (D. Conn. 1999) ("The primary purpose of impleading third parties is to promote judicial efficiency by eliminating circuity of actions."). Furthermore, Rule 14 "was designed to permit the liberal joinder of parties so that judicial energy could be conserved and consistency of results guaranteed." *Olympic Corp. v. Societe Generale*, 462 F.2d 376, 379 (2d Cir. 1972).

Despite these admonitions that consolidation of related claims is beneficial and should be permitted liberally, Third-Party Defendants advocate that the residency limitation in § 33-929(f) should apply to third-party actions to bar claims for indemnification against another foreign corporation. By adopting the Third-Party Defendants' argument, any possible benefits in terms of preserving state judicial resources would be overwhelmed by the burden placed on other jurisdictions obliged to preside over actions, which should properly have been consolidated with the original action. In fact, the original plaintiff would likely find himself brought in as a party

- 14 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

or witness to the indemnification or contribution action in the foreign jurisdiction,[12] and would lose the benefit of having multiple potentially responsible parties included in the action, an especially important consideration if the original defendant has few assets or is insolvent. The reality would be increased burdens not just on all courts, but on the Connecticut plaintiff himself. Such a result is patently inconsistent with the policies underlying F.R.C.P. Rule 14.

Furthermore, Third-Party Defendants' interpretation of C.G.S. § 33-929(f) conflicts with modern conceptions of the purpose of long-arm statutes. "There is little doubt that [long-arm statutes] encourage the joinder of all parties to the dispute, even those who are beyond the territorial boundaries of the state, and thereby promote the modern policy of disposing of complex or multiparty disputes in one suit." 4 Wright & Miller, *Fed. Practice & Procedure* § 1068 (3d ed. 2004). If the Third-Party Defendants had their way, non-resident defendants sued in Connecticut courts would be denied their access to the impleader procedures against other foreign corporations.

Third-Party Defendants' argument would also impose a significant, and undue, burden upon non-residents sued in Connecticut by denying their access to impleader procedures against other foreign corporations, something available as a matter of right to resident defendants. In *Dery*, the Second Circuit recognized that a primary purpose behind third-party practice is "to do away with the serious handicap to a defendant of a time difference between a judgment against him and a judgment in his favor against the third-party defendant." *Dery*, 265 F.2d at 806. Dealing with an issue similar to the one at bar, the Washington Supreme Court in *Deutsch v.*

---

[12] This is because the original plaintiff's conduct and damages would likely be at issue, both from the standpoint of establishing the facts and liability and with respect to any defenses that might exist in that indemnification and contribution action.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

*West Coast Mach. Co.*, 497 P.2d 1311, 1317 (Wash. 1972) recognized the significant burden

upon a defendant of bringing a separate indemnification claim in a different forum:

> The rights of the third party plaintiff for indemnification against the third party defendant
> in this action are dependent upon the primary liability of the third party defendant … It
> would not only be most unfair to require the third party plaintiff to relitigate this case in
> another independent action, but it would be contrary to the doctrine that would avoid a
> multiplicity of suits.

*Deutsch v. West Coast Mach. Co.*, 497 P.2d, at 1317.

Third-Party Defendants' interpretation of C.G.S. § 33-929(f) would indeed impose this

"serious handicap" of denying access to third-party procedures in a blanket fashion upon non-

residents sued in Connecticut, notwithstanding that the third party may have both substantial

contacts with the State and a significant relationship with the resident plaintiff.  Under the Third-

Party Defendants' argument, even where a Connecticut resident plaintiff would be able to assert

personal jurisdiction over the third-party defendant, as is clearly the case here (*see* Section II, B,

*supra*), the defendant/third-party plaintiff would be barred from allocating responsibility for the

*plaintiff's claims* through Rule 14(a).  Beyond this, it would have the result of allowing a resident

plaintiff to pick and choose who to sue, knowing that any nonresident defendants would be

unable to implead other nonresident responsible parties.  The result could be an unjust placing of

liability and financial burden upon someone whose factual responsibility might be only a portion

(perhaps even a *de minimus* one) of the sum total, as compared to those whom – for whatever

reason[13] – the plaintiff chose not to sue.  This outcome would be the exact opposite of how

federal and state third-party procedures are intended to function:  As noted in *Bradford v. Herzig*,

33 Conn. App. 714, 724 (1994):

---

[13] Such reasons could hypothetically run the gamut from a lack of presuit information to collusion between the
plaintiff and those potential defendants which it decided not to sue.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> It is axiomatic that where the negligence of two persons concludes to produce a single result, a plaintiff can elect to sue either or both. If the defendant believed that a nonparty was responsible for some or all of the plaintiff's injuries, it was his responsibility to implead that nonparty. (Internal citations omitted; internal quotation marks omitted).

*Bradford*, 33 Conn. App. at 724. These results are clearly unjust and unreasonable and are results that the legislature did not intend.

### 4. C.G.S. § 33-929(f) SHOULD BE INTERPRETED SO AS TO OBTAIN A REASONABLE AND JUST RESULT

Inasmuch as the Third-Party Defendants' narrow interpretation of the statutory language in § 33-929(f) yields irrational results when applied to a third-party action, the statute should be interpreted so as to reach a reasonable and just result. *See Rocco*, 268 Conn. at 550. The court in *Southern Iowa Mfg. Co. v. Whittaker Corp.*, 404 F.Supp. 630 (S.D. Iowa 1975) dealt with very similar issues to those presented here, and produced a just result. There, an Iowa steel buyer sued a foreign corporation steel seller, asserting personal jurisdiction under Iowa's long-arm statute. *Id.* at 631-32. The steel seller, in turn, filed a third-party complaint against a steel processor, another foreign corporation. *Id.* at 632. The third-party defendant filed a motion to dismiss, arguing that the steel seller, as a non-resident of Iowa, was ineligible to use the Iowa long-arm statute. *Id.* The Iowa long-arm statute (while not containing the language as in the Connecticut statute) had previously been interpreted to be only available to residents of Iowa. *Id.* at 633 (citing *Edwards v. Ainsworth*, 377 F.Supp. 200 (S.D. Iowa 1974); *Edmundson v. Miley Trailer Co.*, 211 N.W.2d 269 (Iowa 1973)).

The Iowa District Court took a particularly persuasive and logical approach to this issue. Rather than focusing upon the undisputed non-resident status of the defendant/third-party plaintiff, the court instead looked to the relationship between the *plaintiff* and the third-party

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

defendant.  Finding first that the third-party defendant had sufficient contacts with the state to satisfy constitutional due process concerns, the court reasoned that the third-party defendant would be amenable to suit in Iowa if it had been sued by the Iowa resident plaintiff.  *Whittaker Corp.*, 404 F.Supp. at 633.  Based upon this, the court saw "no reason to restrict Whittaker's ability (as a non-resident defendant and third-party plaintiff) to serve the [third-party defendant] for impleader purposes."  *Id*.  Further, since the plaintiff could have sued the third-party defendant directly as a defendant, "no substantial problems of fairness or an inconvenient forum are raised by Whittaker's decision to implead Chicago Steel as a third-party defendant."  *Id*.

The court's reasoning in *Whittaker* adequately addresses and satisfies all concerns previously described.  First, Connecticut residents and businesses would still be afforded the benefit of exclusive access to the long-arm statute in the context of first-party actions, as the interpretation of the statute remains unchanged in asserting original jurisdiction.  Second, assuming that a resident plaintiff could utilize the long-arm statute to bring a claim against a third-party, a non-resident defendant would be afforded the same rights to impleader procedures as other domestic defendants, without burdening the courts of this or any other state with additional lawsuits.  The imprimatur of F.R.C.P. Rule 14 favoring consolidation of related claims is preserved.  Finally, there is no unfairness to third-party defendants, since they would have been subject to a direct action by the plaintiff in the first instance.

In the instant case, the *plaintiff's* underlying claims form the basis for the Third-Party Defendant's potential liability, as Third-Party Plaintiff seeks indemnity and contribution with respect to the claims that were brought against it.[14]  Because the plaintiff – undeniably a resident

---

[14] As noted in Section  II D,  *infra,* even liability against CIR and Dry Products based upon the Uniform Fraudulent Transfer Act relies, in the first instance, upon establishing Third-Party Defendants' liability with respect to the Bakery Machine in question.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

**HALLORAN**
**& SAGE** LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

of Connecticut -- would be able to rely upon C.G.S. § 33-929(f) to assert personal jurisdiction

over the Third-Party Defendants, and because Third-Party Plaintiff has more than pleaded

sufficient contacts by the Third-Party Defendants to satisfy any Due Process concerns (*see*

*generally* Section II, B, *supra*), the long-arm statute should be interpreted to allow this third-

party action to proceed.

### C.    APPLICATION OF THIRD-PARTY DEFENDANTS' INTERPRETATION OF C.G.S. § 33-929(f) WOULD VIOLATE CONSTITUTIONAL PRINCIPLES

Irrespective of the reasons outlined above, adoption of the Third-Party Defendants'

position that resident corporations -- *but not foreign corporations* -- sued in Connecticut may

avail themselves of the long-arm statute to implead nonresident third-party defendants presents

serious questions as to the constitutionality of the statute as applied to Third-Party Plaintiff, as it

would treat this nonresident in a manner differing from residents, with no rational basis to do so.

It is well-established that courts should interpret statutes in a manner consistent with basic

constitutional principles.  *Giaimo*, 257 Conn. at 494.  As noted in Section II, B, 1, *supra*, the

legislature is presumed to have intended a reasonable, just and *constitutional result*.  *Id.*  Thus,

"[i]f literal construction of a statute raises serious constitutional questions, we are obligated to

search for a construction that will accomplish the legislature's purpose without risking the

statute's invalidity."  *Id.* at 497 (quoting *Worsham v. Greifenberger,* 242 Conn. 432, 443 (1997))

First, the application of the residency limitation in § 33-929(f) constitutes a violation of

equal protection principles under the state and federal constitutions.  While the equal protection

clause "does not prevent a state from adjusting its legislation to differences in situation or forbid

classification in that connection, . . . it does require that the classification be not arbitrary, but

based on a real and substantial difference, having a reasonable relation to the subject of the

- 19 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

particular legislation." *Power Mfg. Co. v. Saunders*, 274 U.S. 490, 493 (1927).  As explained in

*Saunders* in relation to a state's treatment of non-resident corporations:

> No doubt there are subjects as to which corporations admissibly may be classified separately from individuals and accorded different treatment, and also subjects as to which foreign corporations may be classified separately from both individuals and domestic corporations and dealt with differently.  But there are other subjects as to which a course is not admissible; the distinguishing principle being that classification must rest on differences pertinent to the subject in respect of which the classification is made.

*Id.* at 493-94.

Applying the Third-Party Defendants' incorporation of the residency limitation in § 33-

929(f) to third-party actions would deprive the class of non-resident defendants with the option

of asserting third-party claims against other nonresidents, while allowing such  claims by

resident defendants.  Absent a reasonable basis for this discriminatory classification, the

classification is invalid under the equal protection clauses of the Federal and state constitutions.

*See Wendt v. Wendt*, 59 Conn. App. 656, 684-85 (2000) ("[I]n order to satisfy the equal

protection clause the classifications made must be based upon some reasonable ground …")

The court in *Hughes Tool Co. v. Meier*, 486 F.2d 593 (10th Cir. 1973) was faced with a

similar problem where one literal reading of the Utah long-arm statute created a potentially

unconstitutional result.  Utah's long-arm act contained language declaring its purpose to be to

"provide its *citizens* with an effective means of redress against non resident persons …" and

further "to ensure maximum protection to *citizens* of [Utah] …" *Id.* at 594 (Emphasis in

original.)  The defendant in *Hughes Tool Co.* argued that this language precluded a foreign

corporation from asserting jurisdiction over another foreign corporation under the long-arm

statute.  Rejecting this argument, the Tenth Circuit held that, pursuant to the Utah Code, foreign

corporations permitted to engage in business in the state were entitled to the same rights and

privileges as domestic corporations, including access to Utah courts, and that "a holding to the

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

contrary might well run *contra* to the equal protection clause of the Fourteenth Amendment." *Id.* at 596. *See Saunders*, 274 U.S. at 494 (holding that state venue requirements that adversely affected foreign corporations were unconstitutional as they were "without reasonable basis and essentially arbitrary.")

While the statutory language and factual circumstances of the *Hughes Tool Co.* case are not identical to the instant matter, this case presents even greater concerns for the constitutional rights of non-resident corporations as original jurisdiction has already been established and the defendant is merely asserting a third-party claim so as to include additional parties potentially responsible for the damages claimed by this plaintiff. An interpretation of the Connecticut long-arm statute as precluding a non-resident foreign corporate party from impleading another non-resident would deprive the non-resident party defendant of the ability to claim over against others in a situation where residents have such right, a violation of equal protection under both the federal and state constitutions.

While courts have upheld as rational such distinctions in the context of first party claims, *see*, *e.g.*, *Arrowsmith v. United Press Int'l*, 320 F.2d 219, 232 n. 19 (2d Cir. 1962), in the context of third-party actions -- where a non-resident corporation has against its will already been haled into court in Connecticut and where a valid third-party action for indemnification exists -- this statutory distinction has no reasonable or rational purpose, and indeed defeats the goal of an efficient adjudication of disputes.[15] Indeed, subjecting a non-resident corporation to such burdensome requirements during the course of litigation has previously been recognized as invalid on equal protection grounds by the Supreme Court. The court in *Kentucky Fin. Corp. v. Paramount Auto Exch. Corp.*, 262 U.S. 544 (1923), the court stated:

---

[15] *See* discussion, Section II, B, 3, *supra.*

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

> No doubt a corporation of one state seeking relief in the courts of another must conform to the prevailing modes of proceeding in those courts and submit to reasonable rules … but it cannot be subjected, merely because it is such a corporation, to onerous requirements having no reasonable support in that fact and not laid on other suitors in like situations.

*Id*. at 551.

Furthermore, application of the residency limitation in § 33-929(f) to prevent non-resident corporate defendants from availing themselves of third-party procedures similarly constitutes discrimination in violation of the Commerce Clause, Art. 1, § 8, cl. 3, as the burden that such an interpretation would impose upon interstate commerce exceeds any local interest that the State may advance.

The Commerce Clause provides that "[t]he Congress shall have Power … [t]o regulate Commerce … among the several States."  U.S. Const. Art. 1, § 8, cl. 3.  "Though phrased as a grant of regulatory power to Congress, the Clause has long been understood to have a 'negative' aspect that denies the States the power unjustifiably to discriminate against or burden the interstate flow of articles of commerce."  *Oregon Waste Systems, Inc. v. Dep't of Envtl. Quality*, 511 U.S. 93, 98 (1994).

"[T]he first step in analyzing any law subject to judicial scrutiny under the negative Commerce Clause is to determine whether it regulates evenhandedly with only incidental effects on interstate commerce, or discriminates against interstate commerce … [D]iscrimination simply means differential treatment of in-state and out-of-state economic interests that benefits the former and burdens the latter."  *Id*. at 99 (internal citations and quotation marks omitted).  "A state statute that clearly discriminates against interstate commerce is unconstitutional unless the discrimination is demonstrably justified by a valid factor unrelated to economic protectionism."  *Fort Gratiot Sanitary Landfill, Inc. v. Michigan Dep't of Natural Resources*, 504 U.S. 353, 359

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

(1992) (internal quotations marks omitted). "By contrast, nondiscriminatory regulations that have only incidental effects on interstate commerce are valid unless the burden imposed on such commerce is clearly excessive in relation to the putative local benefits." *Oregon Waste Systems*, 511 U.S. at 99 (internal quotation marks omitted).

The case of *Bendix Autolite Corp. v. Midwesco Enter., Inc.*, 486 U.S. 888 (1988), provides an analogous example of state legislation regulating civil procedure failing Commerce Clause analysis. There, the Supreme Court addressed an Ohio statute which tolled the statute of limitations for any persons or corporations not present in the state. *Id*. at 889. In order to gain the benefit of a statute of limitations defense, a non-resident corporation would have to appoint a resident agent for service of process in Ohio. *Id*. at 894. Thus, a non-resident corporation was forced to make a choice between appointing an agent and exposing itself to general jurisdiction in Ohio courts, or forfeiture of a statute of limitations defense. *Id*. at 894.

The court in *Bendix Autolite* found the Ohio statute unconstitutional under the Commerce Clause, stating:

> Although statute of limitations defenses are not a fundamental right, it is obvious that they are an integral part of the legal system and are relied upon to project the liabilities of persons and corporations active in the commercial sphere. The State may not withdraw such defenses on conditions repugnant to the Commerce Clause. *Where a State denies ordinary legal defenses or like privileges to out-of-state persons or corporations engaged in commerce, the state law will be reviewed under the Commerce Clause to determine whether the denial is discriminatory on its face or an impermissible burden on commerce. The State may not condition the exercise of the defense on the waiver or relinquishment of rights that the foreign corporation would otherwise retain.*

*Id*. at 893 (emphasis added; internal citations omitted).

Here, the Third Party Defendants' interpretation of § 33-929(f) would constitute the same variety of discrimination upon non-resident corporations sued in Connecticut as the Supreme Court addressed in *Bendix Autolite*. Foreign corporations would be forced to choose between

- 23 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

subjecting themselves to the costs and duties of taking up residence in Connecticut or having a usual place of business here, and general jurisdiction in Connecticut, or face the deprivation of their right to bring third-party actions in suits already commenced.  As noted earlier, there is no legitimate justification for imposition of this residency limitation upon foreign corporations in the third-party context.  Accordingly, this discriminatory regulation, which imposes a substantial burden upon non-resident foreign corporation defendants, engaged in commerce, that domestic corporations do not face, is invalid under the Commerce Clause.

Third-Party Defendants propose that Third-Party Plaintiff, as a non-resident foreign corporation sued in Connecticut, be denied access to federal and state impleader rules; given that the distinction proffered by Third-Party Defendants is without any rational basis, an interpretation leading to that result should be rejected.

### D.     F.R.C.P. RULES 14 AND 18 ENABLE THIRD-PARTY PLAINTIFF TO ALLEGE DIRECT CLAIMS AGAINST THE THIRD-PARTY DEFENDANTS

The Third-Party Defendants argue that C.G.S. § 52-102a (Connecticut's impleader statute) bars Third-Party Plaintiff from including claims against the Third-Party Defendants under the Uniform Fraudulent Transfer Act, as adopted in Connecticut and Delaware ("UFTA"), and the theories of alter-ego and piercing the corporate veil.  *See* Opp. Mem., pp 11-14.  In the first instance, the Third-Party Defendants are incorrect in arguing that the Third-Party Plaintiff's proposed amendments add new causes of action under theories of alter ego or piercing the corporate veil.  Although the Third-Party Plaintiff is surely authorized to plead such claims under F.R.C.P. Rule 18 (*see* discussion, *infra*), it is not amending its Third-Party Complaint for this purpose.  Claims under theories of alter ego or piercing the corporate veil are incorporated within

- 24 -

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

the Third-Party Plaintiff's indemnification and contribution causes of action, which were alleged at the time the original Third-Party Complaint was filed. *See generally* Third-Party Complaint.

In any event, the Third-Party Defendants' reliance on the state impleader statute is misguided, for C.G.S. § 52-102a is the procedural mechanism in a Connecticut state court action to implead someone who may be liable for all are part of a plaintiff's claim. *See Schurgast*, 156 Conn. at 484. Obviously, third-party practice in the federal courts is governed by F.R.C.P. Rule 14. *See* F.R.C.P. Rule 14; *see also Hartford Fire Ins. Co. v. County Asphalt, Inc.*, No. 01CIV6176, 2002 WL 31654853, *2 (Gorenstein, M.J.) (S.D.N.Y. Nov. 22, 2002) (Attached hereto as Exhibit 4)("Third-party practice, or impleader, in the federal courts is governed by Rule 14 of the Federal Rules of Civil Procedure."). Once a party asserts a proper impleader claim under Rule 14, it may also rely upon Rule 18(a) to assert any and all additional claims – regardless of whether transactionally related to the impleader claims – the party may have against a third-party defendant. *See Friedman v. Hartmann*, 787 F.Supp. 411, 422 (S.D.N.Y. 1992).

Here, Third-Party Plaintiff asserted proper Rule 14(a) claims against the Third-Party Defendants under theories of contribution and indemnification. *See* Third-Party Complaint; Amended Third-Party Complaint; F.R.C.P. Rule 14(a). Notably, the Third-Party Defendants answered the Third-Party Complaint on May 17, 2004. Given this, Rule 18(a) authorizes, and indeed encourages, Third-Party Plaintiff's inclusion of its allegations, including the UFTA Claim. Accordingly, the Third-Party Defendants' claim that movant may not include its allegations of corporate domination and its claim for fraudulent transfer should be rejected, and amendment allowed.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

## III.    CONCLUSION

As outlined above and in movant's original Memorandum in Support of Motion for Leave to Amend, Third-Party Plaintiff should be allowed to amend its Third-Party Complaint. Third-Party Defendants' efforts to resist such amendment based on arguments that this Court cannot obtain jurisdiction over them are, themselves, futile: their presence conferred *in personam* jurisdiction under C.G.S. § 33-929(e), and, in the context of a third-party action, movant may rely upon the Connecticut long-arm statute to implead them.  Third-Party Defendants other arguments are equally unavailing, for there is no doubt not only that the theories of corporate control and domination are merely part of the indemnity and contribution claims, but that Third-Party Plaintiff may assert any claims between it and the Third-Party Defendants, under F.R.C.P. Rule 18(a).

All that movant seeks is that all disputes arising from the unfortunate events which occurred at Chaves Bakery on April 27, 2001, be adjudicated in one proceeding.  The proposed Amended Third-Party Complaint is designed to do just that.  It is submitted that under F.R.C.P. Rules 14 and 18, and a proper interpretation of Connecticut jurisdictional statutes, this court can and should allow this amendment, so that this case may proceed for a efficient, full, fair and just adjudication of this dispute in one proceeding.  Accordingly, it is respectfully requested that this court grant Third-Party Plaintiff's Motion for Leave to Amend.

Dated at Hartford, Connecticut on this 11th day of February 2005.

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105

THE THIRD-PARTY PLAINTIFF,
SIG SIMONAZZI NORTH AMERICA, INC.


By_____/s/_____
      Patrick M. Birney
      Joseph G. Fortner, Jr.
      HALLORAN & SAGE LLP
      Fed. Bar #ct 19875
      Fed. Bar #ct 04602
      One Goodwin Square
      225 Asylum Street
      Hartford, CT 06103
      (860) 522-6103


# CERTIFICATION

This is to certify that on this 11th day of February 2005, I hereby sent a copy of the foregoing via regular mail to:

Richard J. Sullivan, Esq.
Sullivan & Sullivan, LLP
31 Washington St.
Wellesley, MA 02481
Attorneys for Plaintiff

Jonathan Mazer, Esq.
John R. Horan, Esq.
Fox Horan & Camerini
825 Third Avenue
New York, NY  10022
Attorneys for Third-Party Defendants

Deborah S. Russo, Esq.
Day, Berry & Howard
CityPlace
Hartford, CT  06103
Attorneys for Third-Party Defendants


      _____/s/_____
      Patrick M. Birney

648498_6.DOC

One Goodwin Square
225 Asylum Street
Hartford, CT 06103

HALLORAN
& SAGE LLP

Phone (860) 522-6103
Fax (860) 548-0006
Juris No. 26105